Filed December 12, 1895.

No. 17,516.

WYSOR ET AL. *v.* THE LAKE ERIE & WESTERN R. R. CO.

RAILROAD —*Transfer Track for Convenience of Foundry.—Changing to Main Track.—Easement.*—A railway company to which is conveyed a right of way limited to a track right only over specified land, in consideration of its maintaining a transfer track by the grantor's foundry so as to connect its railroad with another railroad running over the same land, or a spur track from its road to such foundry, cannot, after a transfer track has been built and maintained for ten years for the special use and convenience of the foundry, move such track so as to appropriate other land of the grantor and change the transfer into a part of its main track, thus depriving the grantor of the exclusive use of such track while loading and unloading cars.

From the Delaware Circuit Court.

*J. W. Ryan* and *W. A. Thompson,* for appellants.

*W. E. Hackedorn, J. B. Cockrum, R. S. Gregory* and *A. C. Silverburg,* for appellee.

HOWARD, J.—The appellee company is the successor of the Lafayette, Bloomington & Muncie Railroad Company, and its railroad track passes from east to west across the south side of appellants' lands in the city of Muncie. Another railroad, now known as the

Fort Wayne, Cincinnati & Louisville Railroad, formerly the Fort Wayne, Muncie & Cincinnati Railroad, and which, for convenience, we shall refer to as the Fort Wayne road, runs in a southwesterly direction across the southeast corner of appellants' said grounds, crossing the Lake Erie road at that point.    The premises of appellants, consequently, for the greater part, lie in an angle, north and west of the two railroad tracks.

The appellants are engaged in operating a foundry and machine shop, their principal building being a large brick structure, which, with its adjacent sheds and other out buildings, stands close up in the angle of the two tracks.

On September 22, 1879, the appellants, being desirous of additional shipping facilities for their foundry and machine shop, entered into a written agreement with appellee's predecessor, the said Lafayette, Bloomington & Muncie Railroad Company, according to which said company acquired the right to run its main track over appellants' said lands, and in return the railroad company was to build a transfer track by the foundry, and between the two roads, or a spur track to the foundry.

It appears that the appellants already had some kind of connection, by side track, with the Fort Wayne road; and were desirous of being connected also with the road of appellee's said predecessor.

The agreement so made was carried out.    Appellee's predecessor, the said Lafayette, Bloomington & Muncie Railroad Company, built its main track over appellants' land, and also built a track connecting its road, by way of the foundry, to the Fort Wayne side track.    At first only a spur track was constructed from the Lake Erie road to the foundry.    Afterwards, at the request of appellants, the spur was continued around in front of the

foundry, and to a connection with the Fort Wayne side track.

The transfer track, so built, seems to have been used merely for pushing in, and taking out single freight cars, to the foundry and back, or to or from either road.

The curve was not such that any train, either freight or passenger, or even a single passenger car, could safely go from one road to the other.

The tracks, as so built and used, continued unchanged from 1879 to 1890. During these years the appellants had cars standing on the transfer track when they needed them. There they were loaded or unloaded directly into or from the buildings on the foundry grounds. Occasionally, either railroad company stood idle box or freight cars upon this track, or, as appears, pushed, or set, freight cars in upon the track, from which they would be pulled out upon the other road.

Some time during the period between 1879 and 1890, the Lake Erie & Western Railroad Company, the appellee, came into possession of the said Lafayette, Bloomington & Muncie Railroad; and, in May, 1890, the appellee likewise obtained control of the Fort Wayne road; the latter road, however, remaining under a distinct organization. Soon after obtaining control of the latter road, the appellee began preparations for a rearrangement of the transfer track, so as to lessen the curve, in order to use the track for the general passenger and freight business of the two roads.

As soon as these preparations were discovered by the foundry and machine shop company (the appellants) they at once brought this suit to restrain such contemplated action by the appellee; whereupon a restraining order was issued by the court, July 25, 1890, as follows:

"It is ordered that the defendant, the Lake Erie &

Western Railway Company, her agents, employes, engineers, road-masters, track-layers, and all other servants and agents are hereby restrained, enjoined and inhibited from taking up, changing, altering, removing' or destroying, any and all portions of the switch, transfer track, or siding, now lying upon and along, and adjacent to the foundry house and buildings of the plaintiffs, on that portion of section 15, township 20, north of range 10 east, in Delaware county, Indiana, occupied by the plant and foundry, and machine shop, sheds, etc., of the foundry and machine works of the plaintiffs, in Muncie, in said county.   And it is further ordered that said defendant is also restrained from using said track and switch for the passing and transfer of passenger trains and freight trains, to and from each of said roads, and both of them."

A further hearing was had on July 30 and 31, and on August 4, 1890, at which last date the following order was made :

"It is, therefore, ordered and adjudged by the court, that the injunction heretofore granted in chambers in this court be, and the same is hereby modified, so as that the defendant can use the transfer track in the manner heretofore used by it.   And, further, that the injunction, as granted in chambers, be, and it is hereby continued, as granted, as to the removing of the transfer track ; that is, that said defendant shall not remove, or attempt to remove said transfer track.   To which ruling of the court, said parties each separately and respectively object."

Afterwards, on August 11, 1890, on petition of the appellee, the injunction was still further modified as follows :

"The defendant is hereby restrained from and enjoined from removing said transfer track off

plaintiff's tract of land, or from moving and re-locating said track northward at all [that is, towards the foundry], and from moving said track southward [that is, away from the foundry], farther than its right of way extends, as granted under the deed of conveyance from plaintiffs to the Lake Erie & Western Railroad Company, or from destroying said transfer track. To which ruling of the court and order thereon, said plaintiffs each at the time excepts."

This final modification of the restraining order was obtained between four and five o'clock on the evening of August 11, 1890; and immediately thereafter appellee put a force of men at work moving the transfer track, and also the main track, southward, from their former to their present locations. The work was completed during that night and a train run over the new laid transfer track.

The appellants next filed a second paragraph of complaint, for ouster, damages and injunction, alleging substantially, the foregoing facts, except as to the proceedings had under the first paragraph, setting out also the contract for rights of way between the parties, and the laying of appellee's main track under provisions of said contract, also the building of the spur to the foundry, and the subsequent extension of the same around by the foundry to connect with the Fort Wayne side-track.

The paragraph then continues: "And the plaintiffs aver that after constructing said two tracks, main track and transfer track, at the time, and in the manner, and under the circumstances aforesaid, the defendant and her predecessor, the Lake Erie & Western Railway Company, used the said main track for her general transfer, and the said transfer track for changing and transferring her exchange freight business to said Fort

Wayne, Muncie & Cincinnati Railroad, and *vice versa,* and not otherwise, for more than ten years, without any change, the said plaintiffs using the same without objection or obstruction for all their purposes and business as their own track and switch; until on the 11th day of August, 1890, the defendant by her employes, in the night time and on the seventh day of the week, commonly called Sunday, forcibly and unlawfully took possession and control of the said transfer track of plaintiffs, and tore up the same and changed it to a new location on said land, and changed the form and termination in such a manner as to constitute it and connect it into an extension of the main track of the Fort Wayne, Cincinnati & Louisville Railroad, into the passenger station and yards and freight yards of said defendant; and thereby deprived the plaintiffs of the use, ownership and control of the same, by such exercise of fraud, violence and overpowering might. And the plaintiffs further aver that on the day last aforesaid [August 11, 1890], the said defendant by her same said employes and agents, and by the said same acts of fraud, violence and overpowering might, unlawfully and against plaintiffs' consent, and without compensation in either of said cases, abandoned the location of the main track of her said road over and upon plaintiffs' ground, and repudiated, as in the first case, her election and adoption of a track way for her said railroad, and laid her said track upon another and different location on said track without plaintiffs' consent, and without any compensation therefor being paid or tendered. And plaintiffs aver that said railroad defendant never acquired, nor did its predecessors, any rights upon or in said land, by condemnation proceedings at law, or by purchase from plaintiffs, or in in any manner other than by the terms of the contract herein and its effects as interpreted by

said Lafayette, Muncie & Bloomington Railroad or plaintiffs."

A demurrer having been overruled to each paragraph of the complaint, the appellee answered the first paragraph, being that under which the restraining order was granted, in two paragraphs, the first being an argumentative denial of appellants' claims, averring appellee's rights under the contract, giving details of its said rights, denying any intention of depriving appellants of their use of the switch track, as theretofore enjoyed; admitting that appellee intended to use said track for the movement of cars, engines and trains of every kind, to and from the Lake Erie & Fort Wayne tracks, and to maintain, also, a joint passenger depot for the two said railroad companies; and admitting that appellee has no rights in the premises, except those acquired under said contract of right of way.

The second paragraph of answer to the first paragraph of complaint was filed after the removal of the tracks, and was a repetition of the first paragraph of answer; but, in addition, averred that the transfer track was still near enough to the foundry and machine shop for the uses of appellants in loading and unloading freight for their works; saying, also, that the change was made in order that the curvature of the track might be less sharp, and the track be thus the better fitted for the movement of cars, engines and trains; and denying any intention to interfere with the appellants' property or rights.

To the second paragraph of the complaint, being that for ejectment and damages, the appellee filed, first, an answer in general denial, and, second, another general plea, reciting the history of the case, averring appellee's rights under the contract, and denying any interference with the rights of appellants thereunder, claiming that

the changes made in the transfer track were necessary for the better handling of the business of the two railroad companies; and averring that, from the time of such relaying of the tracks to the time of the filing of the second paragraph of the complaint, being a period of about three months, the road was openly used for the general purposes of the two companies as common carriers, and in transporting the United States mails, without objection during that time from appellants. The contract is again set out as an exhibit.

Demurrers to the several special paragraphs of answer were overruled.

To the second paragraph of answer, filed to the second paragraph of complaint, being that for ejectment, the appellants replied, in two paragraphs, by stating that the transfer track was no necessary part of either the Lake Erie or the Fort Wayne road, which are independent systems of railroad lines, but is a mere local convenience, and not essential to the operating of either; that whether the transfer track is maintained, as now located, or is abandoned, is a matter in which the public can have no interest; that, while the appellants were the owners, and in possession of the lands in question, and moved by the threats of the appellee to take unlawful possession of the same, appellants instituted the present suit to enjoin the appellee from carrying out such threats, reciting the proceedings which resulted in the issuing of the restraining order, reciting, also, the facts as to the taking up and removing of the tracks, in violation of such order; that previous to such change of tracks, the said switch, siding or transfer track was but a means of placing cars at and near appellants' foundry and machine shop, from either road, and was but occasionally used by either road for setting over or transferring cars and locomotives from one road to the other;

that, in violation of the restraining order, the tracks were moved off the line upon which they had been located for ten years previous thereto, and placed upon appellants' land; and that the said siding or transfer track was detached from the side tracks and switches of both said railroads and turned into, and united with, the main tracks, thereby the more completely altering said transfer track, and taking the same out of appellants' possession.

Demurrers were overruled to each paragraph of the reply.

On the final submission of the cause, the court called a jury to make return of answer to such questions of fact as should be submitted to them by the court; and the jury returned answers to a great number of interrogatories propounded by the court and by the parties. The court, however, made its own finding of facts and conclusions of law. The conclusions of law were in favor of the appellants on the first paragraph of the complaint, that for injunction; and in favor of the appellee on the second paragraph, that for ejectment.

The form of the decree set out in the record, is as follows:

"And the court now renders judgment upon the special finding of facts and conclusions of law, for the plaintiffs and against the defendant herein, forever and perpetually enjoining the defendant and its successors and assigns from removing said transfer track in question from its present location, as found by the court, northward; and from removing the main track in question southward; and the plaintiff to recover of and from the defendant all costs of this proceeding joined by the first paragraph of plaintiffs' complaint; and against the plaintiffs on the issues joined and proceedings had on the second paragraph of plaintiffs' complaint."

Wysor *et al. v.* The Lake Erie and Western Railroad Co.

Numerous errors are assigned on this appeal, among them: The modifying of the temporary injunction; the overruling of the demurrers to the answers; the conclusions of law on the facts found; and the overruling of the motion for a new trial.

Under all the assignments of error, the one question presented is: What interpretation should be given to the contract between the parties, both in view of its terms and also in view of the acts and conduct of the parties thereunder, and their relations to each other in the premises, particularly at the time the agreement was entered into?

The original contract between the appellants and the Lafayette, Bloomington & Muncie Railroad Company, appellee's predecessor, as the same is set out in the complaint and in the answer, and also in the special finding of facts and in the evidence, is as follows:

"Know all men by these presents, That Jacob H. Wysor, David T. Haines, William Brotherton, Arthur F. Patterson, Geo. W. Greene, and John L. McClintock, of the city of Muncie, in the county of Delaware, and State of Indiana, in consideration of the location, construction and use of the railroad of the company hereinafter named, over, upon or contiguous to the grounds hereinafter described, and of the premises hereinafter stated, do hereby grant, convey and release to the Lafayette, Bloomington & Muncie Railroad Company the right of way for the construction and maintenance of said company's railroad over and across the following described real estate, situated in Delaware county, State of Indiana, to-wit [describing the land], except the right of the Fort Wayne, Muncie & Cincinnati Railroad Company to run their railroad across the southeast corner of said track of land.

"The right of way hereby conveyed is a track right

only, and passes over and across the southwest corner of said tract of land, as far from the brick building on said tract as the said track can be placed with a due regard to the alignment and points to be made east and west of that point.

"The consideration for this grant is, That the said railroad company shall put in and maintain, and its successors and assigns shall maintain, either a transfer track extending from some point on the north side of its railroad, west of said tract of land, to a proper point on the north side of the main track of the Fort Wayne, Muncie & Cincinnati Railroad, east and north from said tract of land, so connected with both roads as to freely admit cars, engines, and trains from either upon said transfer track, and thence safely carry the same to and upon the other, and *vice versa.* And said transfer track shall be laid north of the main tracks of said roads and south of said brick buildings aforesaid, and shall be laid as far south of the front door in the south end of said brick building as possible not to interfere with the main track of either road and the free and safe running of cars, engines and trains over and upon the same either and both ways. Or said Lafayette, Bloomington & Muncie Railroad Company, in default of said transfer track, shall put in and maintain a spur track open at one end only and not less than two hundred feet in length and connected with the main track of said company's road by proper switches, so laid between said main track and the brick building as to admit of freely loading and unloading cars at the front door aforesaid, when said cars are standing upon said spur. All necessary right of way for said transfer track or said spur, over, upon and across said tract of land, is hereby granted, released and conveyed, in addition to

the right of way heretofore granted, released and con-
veyed."

To this contract, as to all others, there must be at least
two parties; and to each of the parties some consider-
ation must move, the consideration to the one being
taken as the equivalent of the consideration to the other.

When we look into the contract before us, we find the
parties to be the appellants, as grantors, and the appel-
lee's predecessor, as grantee. The consideration, mov-
ing from the grantors to the grantee, is the right of
way for grantee's main track over the southwest corner
of the grantors' land, this right of way being limited to
"a track right only." The consideration, moving from
the grantee to the grantors, is, the building and main-
taining, by grantee, of a transfer track by way of the
grantors' foundry and machine shop, so as to connect
grantee's road with the Fort Wayne road; or, in default
of this, that the grantee should at least build and main-
tain a spur track from its road to the foundry and
machine shop.

It is plain that the thing received by the railroad com-
pany was a right of way for its main track, and the
thing received by the foundry company was a convenient
siding for the receipt and discharge of freight to and
from its foundry door. The words of the contract can
be understood in no other way.

An interpretation of the contract that would take
from the appellants the use of their spur, siding or trans-
fer track, and change it into a part of the main line of
appellee's railroad, for the regular and constant move-
ment of freight and passenger trains, would certainly be
subversive of the plain intent and meaning of the
original agreement between the parties. No interpreta-
tion can be allowed which would take from either party

to the contract that consideration for which the contract was originally entered into by such party.

To say that appellants may still load and unload their cars while standing upon appellee's main track, and during the intervals of the passage of appellee's trains, is but a mockery. The very purpose of a side track is to stand cars where they may be conveniently and safely loaded and unloaded, without danger or interruption from passing trains.

We think, therefore, that the court erred in making the order of August 11, 1890, under color of which the appellee undertook to move the transfer track so as to make it a part of its main track, thus compelling appellants to do their shipping to and from cars standing on the main line, and in the intervals of the passing of through trains.

The form of the decree, made nominally in favor of appellants under their first paragraph of complaint, and according to which the appellee is enjoined from moving the transfer track from its present position, shows a total disregard of the rights of the appellants under the contract. To recognize the action of appellee in changing appellants' siding into a part of appellee's main line, and gratuitously to enjoin appellee from making any further change, seems scarcely serious. It amounts to a restraint upon appellee from correcting the wrong already done. Besides, if the judgment, thus formally given to appellants under their first paragraph of complaint, were in fact a judgment in favor of appellants, then the judgment under their second paragraph of complaint should also be for the appellants. The facts in both cases were the same, and if appellants were entitled to injunction under the first paragraph they were equally entitled to ejectment under the second.

If there could be doubt as to the interpretation of the

Wysor *et al. v.* The Lake Erie and Western Railroad Co.

contract, that doubt must be at once removed on an examination of the acts and conduct of the parties at the time of the execution of the instrument and for the ten years thereafter. It is shown that at first the appellee took advantage of its option and constructed only a spur from its railroad track to the foundry. Afterwards, not of its own motion, but at the request of the appellants, appellee continued the spur around to a junction with the side-track of the Fort Wayne road. Thus both parties recognized that the transfer track was for the special use and convenience of the foundry and machine shop. That the appellee, and even the Fort Wayne road, should occasionally set in freight cars upon the transfer, to be taken across to the other road, or should occasionally store idle cars upon the transfer, is not inconsistent with appellants' use of the transfer for its ordinary business. Such use of the transfer was apparently with the full consent, or at least acquiescence, of appellants. The same may be said of efforts made on one or two occasions by appellee, on receiving permission from appellants, to take over an excursion train from one road to the other, such efforts being but partially successful, and showing practically, by a actual experiment, that the track was not made or intended for the passage of ordinary or through trains.

It appears, in addition, that the transfer track, as so constructed and used, while sufficient for the putting in and taking out of freight cars from, and to, either road, was of so sharp a curve as not to be adapted to take trains across in safety. Nor was this a temporary arrangement. For over ten years the track continued to be used as thus originally constructed, as a siding for the accommodation of appellants, and for the occasional transfer of single freight cars to or from either road. The parties in interest having thus placed a construction

upon their contract, the courts will enforce the contract as so construed.  *Pate* v. *French*, 122 Ind. 10 ;  *Heath* v. *West*, 68 Ind. 548 ; *Johnson* v. *Gibson*, 78 Ind. 282 ; Bish. Contracts, section 412.

That after such construction of the contract by the acts of the parties, and after the lapse of ten years' time, it should have been found convenient by the railroad company, on its acquisition of the Fort Wayne road, to take possession of the transfer, and change it into a part of its main line, can add nothing to appellee's rights, and take nothing from the rights of appellants.   To so conclude would be to hold that one of two contracting parties might, when its interests made it desirable to do so, take to itself, by violence or otherwise, both considerations named in the contract ;   thus, without compensation, depriving the other party of its property.

All evidence in this case, therefore, which goes to show how advantageous it would be to the business of appellee to use this transfer track for the running of its general freight and passenger trains, is totally irrelevant. If any of appellants' lands, including that covered by their siding, is necessary for appellee's railroad, the law provides the means by which such property may be acquired on making proper compensation therefor, securing also to appellants their rights under the contract.    The appellee is not driven to take the property by main force from its rightful owners.

It is to be noted, further, that the contract does not specify, in terms, the actual line of either the main or the transfer track.   The description given of the main line is, that it is ''a track right only, and passes over and across the southwest corner of said tract of land, as far from the brick building on said tract as the said track can be placed with a due regard to the alignment and points to be made east and west of that point.''

The description for the line for the transfer track leaves that line also somewhat indefinite, but within certain limits named. We are of opinion that the appellee having laid its tracks under this contract, and upon lines agreed to by the appellants, which lines, as so fixed, were maintained and acquiesced in for ten years, this conduct of the parties amounted to a construction of the contract in this particular, and that neither party could afterwards contend that the track lines should be otherwise located; or that appellee might take up its tracks from the lines on which they were first laid, and select other lines across appellants' premises for its railroad. That would be, in effect, to contend that under this contract, appellee might, from time to time, or at any time, run its tracks over any part of appellants' lands, as it might think best.

In *Wood* v. *Michigan, etc., R. R. Co.*, 90 Mich. 334, which was also an action in ejectment, there was a written contract for right of way, "on the route lately surveyed by said company." The company afterwards varied the line of its road, using a line crossing, at a slight angle, the line originally surveyed.

The court in that case, in stating the contentions of the parties and its own conclusions said:

"It is claimed that this variation is material, as the present location occupies higher ground, and requires a deeper cut. The defendants' contention is that the phrase in the contract, 'on the route lately surveyed,' does not mean the precise line which had been surveyed, but that the parties must have understood that this survey was preliminary only, and that any line following the general course or route marked out on defendants' survey was permissible.

"We cannot assent to this view. * * * The fact appears that the line across plaintiff's land was staked

out at the time of the making of this contract. We think it clear that the land intended was such as is required for a right of way through his land on the line or route surveyed through his land."

In the case at bar, appellee's right of way for its main track is expressly limited to "a track right only." No further use of appellants' land, for second or side tracks, for buildings, fences, ditches, or otherwise, was made in the beginning, nor for the first ten years, during which appellee enjoyed the easement. We do not think, therefore, that appellee can now move its track to some other line, however slight the distance, and thus take possession of land never acquired from appellants. This is equally true as to the original line of the transfer track. The parties, by their original action and long acquiescence, determined the location and amount of the right of way conveyed by the contract. Evidence adduced as to the needs of the railroad company in this particular, was, therefore, also quite irrelevant.

"We have never understood," said this court in the case of *Board, etc.,* v. *South Bend, etc., St. R. W. Co.,* 118 Ind. 68, citing numerous authorities, "that the law will excuse a party from the performance of his contract, because it will be a hardship upon him if he is required to perform, and, we think, no authority can be found to sustain such a contention. The parties made the contract for themselves, and the law will only enforce it according to its terms and conditions."

The appellee, therefore, under the contract, had neither the right to move its tracks, thus unlawfully appropriating appellants' lands, without making compensation ; nor had it the right to appropriate appellants' siding or transfer track, thus changing it into a part of its own main line, and depriving appellants of their consideration under the contract.

The judgment is reversed, with instructions to grant a new trial, and for further proceedings, not inconsistent with this opinion.

