JAMES HUGH HENNING *v.* DENZEL NEISZ.

[No. 370A-33. Filed April 13, 1971. Rehearing denied May 19, 1971. Transfer denied July 14, 1971.]

---

2. See 12 Am. Jur. 2d, p. 772.

*Malcolm G. Montgomery,* of Evansville, for appellant.

*James D. Lopp, Jr., James D. Lopp, Sr.,* of Evansville, for appellee.

STATON, J.—This is an appeal from a Vanderburgh Circuit Court judgment against the appellant-plaintiff who had filed a complaint to enjoin the appellee-defendant from interfering with an easement of necessity running over the appellee-defendant's property and for damages resulting from alleged interferences with the easement. When appellant-plaintiff purchased his property in April 1943, the easement was used by him so that he could reach his property which was land locked. The easement started on Cynthiana Road across the south side of a two acre tract then across to the appellee's thirty (30) acre tract. The very general description of the easement refers to a public road that had been contemplated but none is in the evidence. The temporary easement of necessity was expressly described as follows, and placed of record in the recorder's office of Vanderburgh County in Volume 244, page 321 and reads as follows:

"The grantor also conveys all right, title and interest in and to an easement in a private driveway from the Cynthiana road, across the south side of a two acre tract formerly owned by Peter Leroy McGrath and Hazel B. McGrath and from thence to the Northwest corner of the 30 acre tract herein conveyed."

Appellee-defendant who had purchased his property in 1958, changed that part of the easement from Cynthiana Road back to the barn on May 24, 1961. The easement entrance off Cynthiana Road was moved approximately fifty (50) feet south. We have set out a graphic illustration of easements in question.

The appellant chose to use the newly located easement for approximately five (5) years before bringing this action on September 16, 1966, in the Vanderburgh Circuit Court. There is evidence that the newly located easement was well supplied with gravel and a better road, since it was elevated and not subject to snow drifts. There was a conflict in the evidence on whether the road as changed was more straight and direct than the original. Further conflict is found in the testimony of the witnesses concerning interference with the easement by plowing near and adjacent to the easement's lateral boundaries.

A pretrial conference was held by the parties, which pretrial order reads as follows:

"STATE OF INDIANA:      Vanderburgh
             SS:    Circuit Court
VANDERBURGH COUNTY:    June, 1969

JAMES U. HENNING        CAUSE #1331—
         VS.            ENTRY
                       PRE-TRIAL
DANIEL NEISZ, HELEN NEISZ    ORDER—
                       June 9, 1969

Come now the parties, and comes also the special Judge herein. And now the parties hold pre-trial conference and by agreement of the parties the defendants introduces three (3) pictures showing the right of way as it existed prior

to its change. And now indicates that the defendants will introduce other pictures of the right of way as it presently is. And now it is stipulated that the pictures may be introduced without further identification. The parties further stipulate that the use of the right of way in question was over the area as shown in the three pictures already introduced, and that said use was for a period of more than twenty (20) years.

The parties also agree to stipulate and introduce certified copies of deed from the joint owners of both properties down to the present ownership and to stipulate and agree as to the wording of the Easement in question.

The defendants tender to the plaintiff the three pictures to be used by the plaintiff to show his client, and the plaintiff agrees to have the pictures returned by June 11, 1969, and the plaintiff agrees to have prepared the deed to be introduced. The defendants agree to show the plaintiff prior to the trial the pictures to be taken by the defendants showing the right of way as it now is. The parties agree to be prepared with trial briefs as to the question of whether or not the defendants have the right to change the route of the road-way. The additional question involved in the case is to whether or not if there is a right to change the roadway whether this change is a reasonable change.

The parties agree that the trial date of June 17, 1969 is a firm date and that the trial will be by the Court.

s/s   <em>Addison M. Beavers</em><br>Special Judge,<br>Vanderburgh Circuit Court"

We shall address ourselves first to the proposition of changing an easement which is a way of necessity granted in very general terms.

There is no evidence in the record showing precisely how the original easement was constructed from the barn back to the appellant's property. It does appear from the record that

the easement used by the appellant never terminated at the northwest corner of his property but did terminate during his use of the easement at the northeast corner of his thirty (30) acre tract. The parties agree that no change in the easement took place from the barn back to the appellant's thirty (30) acre tract. All changes complained of were from the barn to the easement entrance on Cynthiana Road. It is apparent immediately that the original expressed easement was changed after it was granted, if in fact it ever existed. The record is silent concerning this initial change. It may have been: (1) By mutual consent of the servient estate owner and the dominant estate owner; (2) By unilateral consent on the part of the servient estate owner or dominant estate owner; (3) By acquiescence of either or both the servient estate owner and dominant estate owner; (4) By a parol grant of a new and different easement; (5) By an unrecorded expressed grant of a new and different easement; or (6) By prescription. The parties both agree that the easement which existed prior to the change made by the appellee on May 24, 1961, existed for more than twenty (20) years. We may assume that we have an established fixed easement prior to the change complained of by the appellant.

> "Generally, the location of an easement once selected or fixed cannot be changed by either the landowner or the easement owner without the other's consent. Accordingly, after a way of necessity has been located, it cannot be changed by either party without the consent of the other, even though the way so located becomes detrimental to the use and convenience of the servient estate." 25 Am. Jur. 2d, Easements and Licenses, § 69, page 476.

In *Wysor v. The Lake Erie and Western Railroad Co.* (1895), 143 Ind. 6, 42 N. E. 353, where a spur track had been laid by the appellee railroad to accommodate the loading and storing of freight cars at the appellant's foundry and subsequently, the appellant railroad decided to move the spur track because of its inconvenience to them, our Supreme Court held: ". . . We are of opinion that the appellee having laid its

tracks under this contract, and upon lines agreed to by the appellants, which lines, as so fixed, were maintained and acquiesced in for ten years, this conduct of the parties amounted to a construction of the contract in this particular, and that neither party could afterwards contend that the track lines should be otherwise located; or that appellee might take up its tracks from the lines on which they were first laid, and select other lines across appellants' premises for its railroad. . . ." Our Supreme Court went on to say: "In the case at bar, appellee's right of way for its main track is expressly limited to a 'track right only.' No further use of appellant's land, for second or side tracks for buildings, fences, ditches, or otherwise, was made in the beginning, nor for the first ten years, during which appellee enjoyed the easement. We do not think, therefore, that appellee can now move its tract to some other line, however slight the distance, and thus take possession of land never acquired from appellants. This is equally true as to the original line of the transfer track. The parties, by their original action and long acquiescence, determined the location and amount of the right of way conveyed by the contract. Evidence adduced as to the needs of the railroad company in this particular was, therefore, also quite irrelevant." (See also *Ritchey* v. *Welsh* (1898), 149 Ind. 214, 48 N. E. 1031).

Generally, it is equally true that: ". . . the course or location of an easement may be changed with the express or implied consent of all parties concerned. Such consent may be implied from the acts and acquiescence of the parties, and an estoppel to claim a former location to be the true one arises from acquiescence in the change. . . ." 25 Am. Jur. 2d, § 69, page 476, N. 10.

In Washburn's Easements and Servitudes at page 265, § 3, we find the following: ". . . And where a right of way is granted, but its locality and duration are not defined, it may become fixed by use and acts of acquiescence of the parties. And where there are two ways which will answer the descrip-

tion in the grant, the grantor's declaration may be admitted as evidence as to which was intended. And when once fixed by user, it may not be changed except by a *sufficiently long acquiescence* therein by the parties in interest." For a general discussion of the relocation of easements see 80 A. L. R. 2d, 743-795. (Our italics).

The change of the easement in the case before us took place on May 24, 1961. Appellant filed his complaint for an injunction and damages on September 15, 1966. During this period of time, approximately five (5) years and three (3) months, the appellant used the changed easement without attempting to use or reestablish the old one. There is a conflict in the evidence as to whether there was ever any objection on the part of the appellant to the change or relocation of the easement. At page 93 of the transcript, the appellant testified that he had a conversation just before Decoration Day in 1961 with the appellee:

"Q. And do you remember your conversation with him?
"A. I asked him what right he had moving that road and I don't know I just, I can't say the exact words, anyway, it was just an argument that got real hot, anyway—."

The questioning of the appellee on direct examination at page 113 of the transcript shows a different understanding of what happened:

"Q. And at that time, did Mr.Henning say anything to you about you changing that road?
"A. No sir.
"Q. Has he ever made any complaints to you about changing that road?
"A. No sir.
"Q. Not until this suit was filed?
"A. That's right.
"Q. That's the first you heard about it?
"A. That's the first I knew and really I didn't know what the suit was until I got you to check on it."

In like manner, we find conflicting testimony on the plowing-up of ground near or on the easement so as to narrow or restrict its use by the appellant. From the judgment of the trial court, we must conclude that all material facts in dispute were decided in favor of the appellee. We cannot and will not weigh the evidence again on appeal. 2 I.L.E., *Appeals,* § 578; *Emerson-Brantingham Implement Co.* v. *Tooley* (1923), 81 Ind. App. 460, 141 N. E. 890; *Bowes* v. *Lambert* (1943), 114 Ind. App. 364, 51 N. E. 2d 83; *Metropolitan Life Ins. Co.* v. *Wolford* (1912), 49 Ind. App. 392, 97 N. E. 444.

It further appears from the evidence that both the appellant and appellee used that segment of the easement that was changed to and from their respective properties. The appellee testified that the road from the barn back to appellant's property was maintained by appellant and that he in no way interfered with that part of the easement. The evidence does not disclose that the appellant contributed to the maintenance of the easement from Cynthiana Road back to the barn before or after it was changed. The fact of appellant's use of the relocated easement for a period of five (5) years and three (3) months was clearly established. 11 I.L.E., *Easements,* § 33. At page 123 of the transcript, the appellee was asked by appellant's attorney:

"Q. Now, what was your primary reason for moving this road to start with, Mr. Neisz?

"A. Well, the easement actually called for the southside and it makes a better road than the one was because of being blocked by snow and there also were children playing in the yard at that time and I felt that it was rather a bad thing for a drive to go right through our yard where children were playing."

Five (5) years and three (3) months after the changing of the easement and after using the easement for five (5) years and three (3) months, the appellant decides that he wants it changed back to its old location. The trial court below found that the appellant had for a sufficiently long period of time

acquiesced in the relocation of the easement and had given his implied consent to the servient estate owner for such relocation. With this finding by the trial court, we must agree.

Acquiescence ". . . is a release or an abandonment of one's rights if, having rights, he stands by and sees another dealing with his property, in a manner inconsistent with such rights, and makes no objection while the act is in progress." *Board of Commissioners of Cass County* v. *Plotner* (1897), 149 Ind. 116, page 121, 48 N. E. 635; *Duke of Leeds* v. *Earl of Amherst,* 2 Phil. Ch. 117.

Dissatisfaction with a newly relocated easement should be made timely and expressed perspicuously so that the intent to completely reject the relocated easement is not left in doubt. All future action should reinforce without qualification the express declaration of complete rejection. In *Wysor, supra,* the court underscored that upon discovering the plans to change the easement, . . . "they at once brought this suit to restrain such contemplated action by the appellee; . . ." We are not suggesting that suit must be brought immediately upon learning of a proposed relocated easement. We are of the opinion that if a relocated easement is unacceptable then a timely expression of complete rejection and dissatisfaction should be made. Any action which would tend to deceive or mislead may constitute sufficient grounds for a court to find acquiescence or an implied consent to the relocated easement.

In the case before us, the trial court found from five (5) years and three (3) months of inaction on the part of the appellant that he had acquiesced in the relocation of the road and had in effect given his implied consent. Once implied consent to the relocation of an easement has been given, it cannot be withdrawn for the purpose of bringing suit. We must concede that the filing of a lawsuit is perhaps one of the strongest expressions of dissatisfaction that can be advanced, but it cannot overcome the stronger presumptive forces put into motion by the appellant for such a long period of time prior to filing suit.

The judgment should be and the same is hereby affirmed with costs against the appellant.

Hoffman, C.J., Sharp and White, JJ., concur.

NOTE.—Reported in 268 N. E. 2d 310.