Marvin SORUM, Plaintiff and Appellee,

v.

Earl SCHWARTZ, Defendant
and Appellant.

Civ. No. 11374.

Supreme Court of North Dakota.

Aug. 31, 1987.

McIntee & Whisenand, Frederick E. Whisenand, Jr. (argued), Williston, for plaintiff and appellee.

McGee, Hankla, Backes & Wheeler, Orlin W. Backes (argued), Minot, for defendant and appellant.

GIERKE, Justice.

This is an appeal by the defendant, Earl Schwartz, from a judgment of the District Court of Burke County decreeing that the defendant did not comply with the requirements of the Judgment on Mandate entered on May 31, 1984, and that the oil and gas lease is forfeited, cancelled and annulled. We reverse and remand.

This is the second appeal of this case which involves an oil and gas lease executed June 10, 1949, by M. Sorum and Anna Sorum of Haxton, North Dakota, to whom Marvin Sorum is a successor in interest. *See Sorum v. Schwartz*, 344 N.W.2d 73 (N.D.1984). The lease specifically covers the South Half of Section Twenty-three (23), in Township One hundred Sixty-three (163) North, Range Ninety-one (91) West, Burke County, North Dakota, and contains 320 acres. The lease was acquired by the defendant, Earl Schwartz, in 1962, and he began operating it in 1969.

Three wells were drilled and completed within the ten-year primary period of the lease: Sorum # 1 in the Southeast Quarter of the Southwest Quarter; Sorum # 2 in the Northwest Quarter of the Southwest Quarter; and Sorum # 3 in the Northwest Quarter of the Southeast Quarter. The

East Half of the Southeast Quarter remains undeveloped. The Sorum # 1 well has not produced since approximately 1969 when the well site was flooded. Sorum # 2 and # 3 have been shut-in since December of 1980 because of bad casing. On January 25, 1982, Marvin Sorum commenced an action for cancellation of the oil and gas lease held by Schwartz.

In the first case, the trial court found an abandonment of the undeveloped 80–acre spacing unit. Further, the district court's decree required Schwartz to bring all three wells into production within 70 days or suffer forfeiture of those spacing units not in production at that time.

On appeal, this Court held that the record was devoid of evidence of physical relinquishment and reversed the trial court's finding of abandonment as to the undeveloped spacing unit. Further, this Court held that the habendum clause requires only that the lessee produce oil or gas from the leased premises. Thus, under the express terms of the lease, Schwartz need only bring one of the wells into production to hold the entire lease. The case was reversed and remanded for further proceedings.

On remand, the district court entered a Judgment on Mandate, decreeing that Schwartz shall have 90 days from the date of the Order for Judgment on Mandate [1] in which to drill and complete an oil and gas well resulting in production of oil and gas, or otherwise bring into production one of the three oil and gas wells situated on the leasehold, and in the event that Schwartz does not produce oil and gas from the premises under the lease within the 90 days, the lease shall be forfeited and cancelled in its entirety.

The record reflects that Schwartz commenced drilling the Sorum # 2R well in early July 1984. The well began pumping in August 1984. The 90–day period under the Judgment on Mandate terminated on August 27, 1984. On September 26, 1984, Marvin Sorum filed a petition for post-judgment determination of the lease interest of the defendant Earl Schwartz. The petition

set forth that the 90–day period expired on August 27, 1984, without oil and gas having been produced and that the oil and gas lease was forfeited and cancelled pursuant to the terms of the Judgment on Mandate. Schwartz asserted in his response to the petition that the Sorum # 2R well was completed on July 31, 1984, and that pumping was commenced prior to August 22, 1984. Schwartz stated in his affidavit dated September 17, 1984, that the Sorum # 2R well began production of oil prior to August 25, 1984, and that the well was swabbed in early August 1984 resulting in 20 barrels of oil. Attached to his affidavit was the Well Completion Report dated August 17, 1984, showing that the well was tested on July 31, 1984, for 10 hours and produced 5.6 barrels of oil.

The trial court ruled that Schwartz had not complied with the requirements of the Judgment on Mandate and declared the oil and gas lease forfeited and cancelled.

The trial court found that Schwartz commenced drilling an oil well known as the Sorum # 2R but never placed such well in production as required by the Judgment on Mandate. The court further found that Schwartz attempted to complete the well and commenced pumping operations on August 22, 1984, but that Schwartz did not obtain production of oil and gas from the well. Further, the court found that Marvin Sorum was vigilant in observing any movement or activities by Schwartz in compliance with said Judgment on Mandate and that Marvin Sorum saw no such activity or proof that Schwartz did complete an oil and gas well resulting in the production of oil and gas within the 90–day period from the date of the court's Order for Judgment on Mandate dated May 29, 1984, nor that Schwartz presented any credible evidence to substantiate his claim that the Order on Mandate had been complied with by Schwartz.

The issue presented is whether the trial court's findings of fact were clearly erroneous: that oil and gas were not produced on

---

1. The order for Judgment on Mandate was entered on May 29, 1984.

the leased premises during the 90–day period.

This Court will not reverse a trial court's finding of fact unless it is clearly erroneous. Rule 52(a), N.D.R.Civ.P. A finding of fact is "clearly erroneous" only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *In re Estate of Elmer*, 210 N.W.2d 815 (N.D.1973).

Schwartz contends that the district court's findings that Schwartz failed to produce oil and gas from the date of the Order for Judgment on Mandate are clearly erroneous. We agree.

The findings of fact, conclusions of law, and order for judgment were entered on July 25, 1986. The testimony at trial indicated that the Lignite gas plant recorded the production of 112,000 cubic feet of gas between August 23, 1984, and August 31, 1984. Also, testimony showed that the well was producing oil and water during the week that it was in operation. The completion report filed with the Industrial Commission stated that the well produced oil when it was tested on July 31, 1984, and that it produced 5.6 barrels of oil when tested for 10 hours. Further, testimony indicated that when the well was swabbed it brought in 20 barrels of oil. Much of the testimony dealt with whether the oil in the tanks at the well site contained old oil or new oil. Sorum testified that he, Kenneth Peterson, Orluf Peterson and James Dufty went to the well site to check the crude oil tanks to determine whether the newly-completed well had produced oil. The parties crawled on top of the two 16–foot high tanks and peered through a small opening with flashlights. Based upon this inspection, Sorum and Kenneth Peterson testified that the tanks did not contain new oil but rather that the tanks contained old oil. Dan Schwartz, the consulting geologist on the Sorum # 2R well, testified that it would be impossible to tell whether the oil in the tanks was new oil or old oil based upon the inspection that was conducted by Sorum. Earl Schwartz testified that the well was

hooked up to the tank batteries and also that the 20 barrels from the swab tank were transferred to the crude tanks at the well site. The record indicates that there was no further evidence introduced relating to the issue of whether the oil in the crude tanks was old oil or new oil.

Forfeitures are not favored, *Helm Bros., Inc. v. Trauger*, 389 N.W.2d 600 (N.D.1986), and the burden of proof is on the party claiming forfeiture of the lease. *Michigan Wisconsin Pipeline Company v. Michigan National Bank*, 118 Mich.App. 74, 324 N.W.2d 541 (1982). In general, one who asserts the existence of a fact material to an issue in a case assumes the burden of proof. *Superior Oil Company v. Devon Corporation*, 458 F.Supp. 1063 (D.Neb.1978), *reversed on other grounds*, 604 F.2d 1063 (8th Cir. 1979).

Marvin Sorum failed to carry his burden of proof in that he did not demonstrate the lack of production of oil and gas from the Sorum # 2R well. Marvin Sorum's bare conclusion that oil and gas were not produced because the two crude tanks did not contain new oil is unsupported by the evidence. The evidence showed that the well produced oil when it was tested and that the oil from the swab tank was transferred to the crude tanks at the well. Further, the evidence showed that gas was produced and that it was sent to the Lignite gas plant. Marvin Sorum testified that he did not receive any royalty checks, that the oil in the crude tanks was old oil, and that he did not see any trucks transporting oil from the well. This testimony establishes nothing more than that there was not enough oil and gas produced for it to be in paying quantities during the 90–day period.

It is clear that the Judgment on Mandate did not require that oil and gas be produced in paying quantities nor could it have intended that production be in paying quantities since such a short time limit was imposed. A reasonable time must be allowed for production in paying quantities in order to determine the average production of oil and gas, the cost of production, and the availability of markets. *State ex rel.*

*Comm. of Land Office v. Carter Oil Co. of West Virginia,* 336 P.2d 1086 (Okl.1958); *Steven v. Potlatch Oil and Refining Co.,* 80 Mont. 239, 260 P. 119 (1927).[2]

While we have found that the district court's findings were clearly erroneous, we could have determined the matter on equitable grounds as well. He who invokes the jurisdiction of equity must come with clean hands and that he who has done iniquity cannot have equity. Kuntz, *Oil and Gas,* § 26.14, p. 323. It must be noted that throughout the 90–day period Schwartz was thwarted by actions of Marvin Sorum in completing the well. Schwartz was forced to have the Ward County sheriff personally serve the notice of drilling operations on Marvin Sorum since he refused to accept the certified letter which contained the required notice. That action delayed drilling operations for five days. Further, electric service to the drill site was delayed because Marvin Sorum refused to grant the REA an easement. Where there is interference by the lessor with operations upon the premises during the term, the lessor is estopped to assert the termination of the lease for non-production. Williams, *Oil and Gas Law,* § 604.7, pp. 88.13–88.16.

For the reasons stated in this opinion, the judgment of the district court is reversed and remanded to the district court for entry of judgment consistent with this opinion.

PEDERSON, Surrogate Justice, and HUNKE and HODNY, District Judges, concur.

LEVINE, Acting C.J., concurs in the result.

PEDERSON, S.J., HODNY, D.J., HUNKE, D.J., sitting in place of ERICKSTAD, C.J., VANDE WALLE, J., and MESCHKE, J., disqualified.

---

**2.** It is to be noted that, under the lease agreement, Schwartz must produce oil or gas "in paying quantities" within a reasonable time in order for the lease to continue.