Elmer E. KNUTSON and June C. Knutson, husband and wife, and Harvey A. Johnson and Edith J. Johnson, husband and wife, Plaintiffs and Appellants,

v.

Earl L. JENSEN and Evelyn C. Jensen, husband and wife, and all other persons unknown claiming an interest in or lien or encumbrance upon the property described in the complaint, Defendants and Appellees.

Civ. No. 880255.

Supreme Court of North Dakota.

April 19, 1989.

William J. Brudvik, Mayville, for plaintiffs and appellants.

Dean E. Lenaburg, of Sproul, Lenaburg, Fitzner & Walker, Valley City, for defendants and appellees, Earl L. Jensen and Evelyn C. Jensen.

VANDE WALLE, Justice.

This is an appeal from a judgment in favor of Earl and Evelyn Jensen against Elmer and June Knutson, husband and wife, and Harvey and Edith Johnson, husband and wife, settling a boundary dispute and quieting title in certain lands. We affirm.

The Knutsons own the Southeast Quarter of Section 3, Township 144, Range 57 West of the Fifth Principal Meridian. The Jensens own the Northeast Quarter of that section. A survey revealed that the boundary between the quarter-sections lies 78 .feet farther north on the west side of the Southeast Quarter and 164 feet farther north on the east. side of the Southeast

Quarter than where the crop line runs. That is, according to the survey, the Jensens' field encroaches upon the Knutsons' land 78 feet on the west side, angling over to 164 feet on the east side. The total acreage in dispute is approximately 7.3 acres.

The Johnsons own the South Half of Section 2, Township 144, Range 57 West of the Fifth Principal Meridian. The Jensens own the North Half of that section. A survey revealed that the boundary between the North Half and the South Half lies 165 feet farther north on the west side of the section and 7 feet farther north on the east side of the section than where the crop line runs. That is, according to the survey, the Jensens' field encroaches upon the Johnsons' land 165 feet on the west side, angling over to 7 feet on the east side. There is no evidence indicating the acreage.

To aid the reader, we have set forth below a diagram of the lands in question. The diagram is not to scale.

The trial court found that the parties considered the crop line to be the boundary line separating their properties for over 20 years prior to the commencement of this action and that the crop lines were well defined. It therefore concluded that the Jensens were entitled to the land in dispute under the theory of acquiescence.

On appeal, the appellants argue that the Jensens failed to prove by clear and convincing evidence that the crop line or land use line in question is definite, certain, and not speculative. They also argue that the Jensens failed to prove by clear and convincing evidence that the parties considered the crop line or land use line to be the boundary between their respective proper-

ties for at least 20 years prior to the commencement of this action. Thus we must resolve whether the trial court erred in concluding the crop line is definite enough to constitute a boundary. If it did not err, we must determine whether it correctly concluded that there was a mutual recognition that the crop line was the boundary separating their properties.

The doctrine of acquiescence evolved from the doctrine of adverse possession. *Production Credit Ass'n of Mandan v. Terra Vallee, Inc.*, 303 N.W.2d 79 (N.D. 1981). Because we have reiterated the history of acquiescence in prior opinions, we do not repeat it here. See *Manz v. Bohara*, 367 N.W.2d 743 (N.D.1985); *Ward v. Shipp*, 340 N.W.2d 14 (N.D.1983); *Production Credit Ass'n of Mandan v. Terra Vallee, Inc., supra.*

In order that a party may prevail upon a theory of acquiescence, he must show that the line acquiesced in is definite, certain, and not speculative. *Manz v. Bohara, supra.* Whether a line is definite, certain, and not speculative is a question of fact and will not be set aside unless clearly erroneous. Rule 52(a), N.D.R.Civ.P. A finding of fact is "clearly erroneous" only when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Sorum v. Schwartz*, 411 N.W.2d 652 (N.D.1987).

Elmer Knutson and Harvey Johnson retained Reinhold Schumacher, a licensed surveyor, to survey the property in question. Schumacher's survey revealed that the crop line was 7 feet south of the north-south section line on the east side of Section 2 and angled over to 165 feet south of the north-south section line on the west side of Section 2 and then angled back to the north across Section 3, ending 78 feet south of the north quarter-section line of the Southeast Quarter of Section 3.

There was some testimony that the line varied from year to year, depending upon who cultivated his field first. However, Johnson testified that the crop line was "reasonably close" to being in the same spot from year to year. Knutson testified that he could not really say if the boundary has been in exactly the same place over the years; he thought it might have varied a few inches to a few feet. Jensen testified that he made a drainage ditch along a portion of the crop line and a few fence-posts still remain from a fence that was erected along where the crop line now lies.

Presented with this evidence, the trial court found that the crop line was definite, certain, and not speculative.

In *Manz*, at 748, we held that "a trail between three rock piles, one of which rock piles has been removed years ago and which rock piles vary in width with the passage of time and continue to accumulate rocks in the normal course of farming, and which trail could move from one location to another within those widths" was not definite and certain enough to constitute a boundary by acquiescence. *Manz* is distinguishable in that the land use line in that case was constantly subject to change. Here, there is sufficient evidence to sustain the trial court's finding that the land use line has essentially remained unchanged over the years, and the finding therefore was not clearly erroneous.

Because the crop line was well defined, we must decide if there was a mutual recognition that the crop line was a boundary and not a mere barrier.

Whether there has been mutual recognition of a boundary is also a question of fact, and the trial court's finding thereon will not be set aside unless it is clearly erroneous. Rule 52(a), N.D.R.Civ.P.; see *Ward v. Shipp, supra.* To establish a new boundary line by acquiescence, it must be shown by clear and convincing evidence that the parties recognized the new boundary line as a boundary, and not a mere barrier, for at least 20 years. Knowledge of where the true line lies is not necessary. *Id.* In *Bernier v. Preckel*, 60 N.D. 549, 557, 236 N.W. 243, 247 (1931), this court quoted C.J. at 246, § 198, as follows:

"In order to establish a boundary by acquiescence, it is not necessary that the acquiescence should be manifested by a conventional agreement, but mutual recognition is necessary. Aside from this

what constitutes an acquiescence or recognition of a boundary line depends on the words or declarations of the parties interested, on their silence, or, as is more frequently the case, on inference or presumptions from their conduct."

 Acquiescence has been defined as "a release or an abandonment of one's rights if, having rights, he stands by and sees another dealing with his property, in a manner inconsistent with such rights, and makes no objection while the act is in progress." *Henning v. Neisz*, 148 Ind. App. 576, 585, 268 N.E.2d 310, 316 (1971), quoting *Bd. of Commissioners of Cass County v. Plotner*, 149 Ind. 116, 48 N.E. 635 (1897). Thus failure of a party to protest the use by others of land is an indication of acquiescence [*Ward v. Shipp, supra*], as is cultivating up to, but never over, a line marked by a fence, trees, and shrubbery. *Bernier v. Preckel, supra,* quoting *Renwick v. Noggle*, 247 Mich. 150, 225 N.W. 535 (1929).

We consider separately whether the Knutsons and the Johnsons recognized the crop line as the boundary dividing their properties from the Jensens' property.

### ELMER AND JUNE KNUTSON

 When the Government surveyed the land in 1879, a marsh covered a portion of the east line of Section 3, and so the surveyor had to place what is called a "witness corner."[1] When the land was surveyed in 1985, the surveyor found the witness corner located 165 feet south of the true corner. The surveyor also testified that the crop line was located in the same place as the witness corner.

Elmer Knutson testified that he first became familiar with the Southeast Quarter of Section 3 in the 1930s when his father, Elias Knutson, owned it. At that time, R.S. Saunders owned the Northeast Quarter. Elmer testified that Saunders established the boundary between the Northeast Quarter and the Southeast Quarter of Sec-

tion 3 in the 1930s by placing a fence along a portion of the line and then later plowing a field the length of the quarter-section. Apparently Saunders used the witness-corner stake as the boundary instead of the true quarter-corner. Elmer testified that the boundary has been within a few feet of the boundary established by Saunders ever since, but that the boundary has always been in dispute.

It is evident from the testimony that because the slough prevented the first surveyor from marking the true quarter-corner, a witness corner was placed and used by Saunders as the true quarter-corner when he plowed his field. Elmer testified that although the boundary was always contested, he treated the crop line as the boundary separating the properties and he did not, within 20 years, seek to have the boundary placed in accordance with the quarter-section line. Thus the trial court did not err in finding that the Knutsons acquiesced in the crop line as the boundary between the parties' land. Accordingly, the judgment quieting title in the Jensens to that portion of Section 3 in dispute is affirmed.

### HARVEY AND EDITH JOHNSON

 Harvey Johnson purchased the South Half of Section 2 from his uncle, Reynold Johnson, in 1973. The land has been in the family since about 1886. Harvey also testified that when he first worked the land in the 1940s, Mr. Jorgenson, then owner of the North Half of Section 2, ran a fence along where the current crop line lies. There is no evidence that anything was done by the then-owners of the South Half of Section 2 to protect their property interest. Jensen testified that he took the fence out approximately 15 years ago, but a few fenceposts remain along the crop line. Harvey testified that he was aware of the crop line and that he tried to follow it when working his field. There was also testimony by Harvey that it was his understanding that if he had the property sur-

1. Reinhold Schumacher, who was hired by the plaintiffs to survey the land, testified that when the Government surveyed land, it would place a witness corner near where the true corner was located whenever it was not feasible to mark the true corner. A surveyor could then tell from prior surveyor notes and the witness corner where the true corner was located.

veyed, Jensen would abide by the survey as to the boundary line. Jensen had no recollection of such an agreement. However, considering this evidence, and the broad discretion the trial court has in weighing such evidence, the decision of the trial court in finding that the Johnsons did acquiesce in the crop line as the boundary was not clearly erroneous.

Contrary to the characterization in the special concurrence, the evidence in this case, including the photographs, indicates the crop lines are more than "sifting sands." Rather, they are marked in part by a drainage ditch, fence posts, a visible fence line, as well as a dead furrow. Furthermore, the evidence indicates that despite the large machinery used in farming the lines varied only 4 to 6 inches from year to year. We do not purport herein to decide cases involving crop lines that are not so clearly demarcated or in which the actual crop line shifts perceptibly from year to year or to cases in which a matter of inches is crucial.

The judgment is affirmed.

LEVINE, MESCHKE and GIERKE, JJ., concur.

ERICKSTAD, C.J., specially concurs.

ERICKSTAD, Chief Justice, specially concurring.

Because we must apply Rule 52(a), N.D. R.Civ.P., I concur, but I do have more difficulty distinguishing *Manz v. Bohara,* 367 N.W.2d 743 (N.D.1985), than the author of the majority opinion. If the test is now to be whether or not the line has remained "essentially" unchanged it will result in encouraging aggressive persons to take advantage of their more docile neighbors. I think that is the wrong signal to be sending.

Basing a boundary line upon a crop line is about as reliable as basing a boundary line on sifting sands as the crop line is likely to be affected by who plants the seeds first each season and will vary accordingly.