Paul A. TRAUTMAN, Plaintiff and Respondent,

v.

Herman AHLERT, Jr., Defendant and Appellant.

No. 8327.

Supreme Court of North Dakota.

Dec. 19, 1966.

Ottmar & Nething, Jamestown, for defendant and appellant.

Hjellum, Weiss, Nerison & Jukkala, Jamestown, for plaintiff and respondent.

TEIGEN, Chief Justice.

The defendant has appealed from an adverse judgment, and demands trial de novo.

The plaintiff is the owner of the West Half and the Northeast Quarter of Section 9, Township 139 North of Range 67 West. The defendant is the owner of the Southeast Quarter of said Section 9. A dispute arose between them as to the location of the boundary between their respective lands. The plaintiff engaged a surveyor, who surveyed the boundaries. According to the boundaries as established by the survey, the defendant was farming a part of the plaintiff's land. This was denied by the defendant, who claimed that the respective boundaries had been established by acquiescence and long usage by the coterminous owners over a period of 40 to 60 years, which boundaries had continuously been recognized as the boundaries between the respective lands since that time. The parties were unable to agree, and the plaintiff commenced this action to determine the adverse claims. The plaintiff also prays for an injunction to enjoin the defendant from trespassing beyond the survey line, and for damages for past trespass. The defendant answered, denying that the surveyed lines are the true boundary lines between the lands of the plaintiff and defendant, affirmatively alleging that existing boundary lines have been established and recognized as boundary lines for over 40 years by the plaintiff and his grantors, that the plaintiff is barred by the statute of limitations from claiming the land between the boundary line established by long acquiescence of the parties and their grantors and the lines established by the recent survey, and asking that the defendant be adjudged the sole owner of the property in dispute by virtue of adverse possession thereof for more than 20 years. The defendant also asked judgment for damages.

The defendant in his counterclaim also prayed that certain roadways which cross plaintiff's Northwest Quarter and lead to the defendant's land be established as public roads by prescription.

The action was tried to the court, and the court found in favor of the plaintiff. It held that there was a total failure of proof of adverse possession on the part of the defendant for a period of 20 years, and a total failure of proof that the road over the plaintiff's land had been in continuous use by the public for a period of 20 years or more. It quieted title in the plaintiff of his lands to the surveyed lines, awarded the plaintiff damages in the amount of $281.25, and restrained and enjoined the defendant from using any part of the plaintiff's land or the roadways located thereon.

We have prepared a plat of the area as follows:

## SEC. 9

Surveyed Line

Rock Line

The defendant traces title to the Southeast Quarter of Section 9 back to his father who acquired it in 1902. The defendant is now 60 years of age, and testified he has farmed the land since his father died in 1949, and that he assisted his father in farming it before that time. He testified his father broke the Southeast Quarter of Section 9 in the year 1920, and that it has been cultivated and cropped continuously since that time. He testified that when the land was broke his father hauled rocks off from the said land and placed these rocks in a line at the west edge of the land; that since 1949 the defendant also had hauled rock and placed the same in this rock line; that the land had been farmed up to the rock line continuously since it was broken in 1920. He testified the rock line has been considered the west boundary of the Southeast Quarter of Section 9 ever since that time, being a period of 45 years before the commencement of this action.

It appears the topography of the land is rolling and hilly, and that there are some large sloughs in the area. The rock line extends southerly from the east-west quar-

ter line a distance of about 600 yards, to the big slough on the south. According to the survey line as established by the surveyor, it appears this rock line varied from approximately 80 to 113 feet west of the survey line. It also appears that a road or trail has been in existence running north and south, west of the rock line, since the early days. This road or trail existed even prior to 1903. It ends before it reaches the south section line of Section 9, because there is a large slough that extends into Section 9 from the south. It has been used principally by the owner of the land and hunters.

The plaintiff traced title of his land back to 1943, when his father purchased the West Half and the Northeast Quarter of Section 9. The West Half of Section 9 is also rolling, hilly, and contains sloughs. It has been used principally for the production of wild hay. The defendant's land has been cultivated since 1920. Thus the land east of the rock line and roadway possessed by the defendant and his father had been cultivated for a period of 45 years when this action was commenced in 1965, whereas the land west of the rock line and road had been permitted to remain in its wild state.

The plaintiff's father, who was 72 years of age, testified that he acquired the West Half and Northeast Quarter of Section 9 by purchase in 1943, and that in 1946 or 1947 he rented the hayland on the Southwest Quarter and a part of the Northwest Quarter to the defendant. These lands were continuously rented by the defendant until 1963. The rock line and the road immediately west of it were there when he purchased the land in 1943. He testified the defendant farmed and cultivated the land east of the rock line right up to the rock line during the full period that he owned the land. He testified that the roadway and the rock line are substantially the same now as they were at the time he purchased the land in 1943. It appears the rock line is not a straight line. According to his testimony, it varies from 80 to 109 feet distant from the survey line.

Another witness, 83 years of age, testified that he had been acquainted with the property since 1903. He testified he remembers the roadway on the west side of the Southeast Quarter of Section 9, and that its location the last time he saw it about ten years before the trial was about the same as he first remembers it in 1903. He also testified he had recollection of the rock line located east of the road. Another witness, age 71 years, who had lived in the area for a long time, testified he first remembered the rock line about 20 years ago, when he traveled the roadway or trail that ran immediately west of it, when he was assessor. Another elderly witness testified that he had been familiar with the rock line since 1921 or 1923, because he had hunted in the area. He described this rock line as follows:

> Well, it's a strip of prairie that hasn't been disturbed I would say probably ten or fifteen feet wide—fifteen—and rocks are strewn along there pretty good shape here and there. Over the hills, at least; through the sloughs, of course—

He testified it was approximately 600 yards long, runs to the big slough in the southwest corner of the Southeast Quarter. He also testified in reference to the rock line as follows:

> They were there the first time I saw it, or most of them were, there's been more added to it every now and then.

■ We find the evidence establishes that the west boundary of the Southeast Quarter was established in about 1920, when the defendant's father broke up the land and started to cultivate it. It was established by placing the rocks which were hauled from the land in a line just east of the road, running from the northwest corner in a southerly direction, and until it reached a large slough which extends northward from the south boundary of Section 9. The road, or trail, has existed immediately west of the rock line since the early 1900's, and the land east of this rock line

has been cultivated as a part of the Southeast Quarter of Section 9 since 1920, and has continuously been in the possession of this defendant and his predecessor since that time. We also find that when the plaintiff's father acquired the land west of the rock line, described as the Southwest Quarter, that the land east of said rock line was then being cultivated as a part of the Southeast Quarter of Section 9, and has continuously been cultivated as a part of the Southeast Quarter since that time. The evidence does not establish who owned the Southwest Quarter prior to the time it was purchased by the plaintiff's father, and there is no evidence in the record to contradict the evidence adduced by the defendant that the rock line and the road or trail immediately west of it were considered by the owners as the west line of the Southeast Quarter of Section 9 until after the land was acquired by this plaintiff in 1964. It is clear from the record that the plaintiff and his grantors had not occupied the strip of land located between the rock line and the survey line at any time after the year 1920, and that during all of this period of time defendant had been in possession which was hostile and under a claim of right actual, open, notorious, exclusive, continuous, and uninterrupted.

Acquiescence in a boundary line is binding on the parties thereto and those claiming under them, and where successive adverse occupants hold in privity with each other under the same claim of title, the time limit for maintaining an action may be computed by the last occupants from the date the cause of action accrued against the first adverse user. Bernier v. Preckel, 60 N.D. 549, 236 N.W. 243.

The plaintiff argues that during the time defendant rented the hayland from plaintiff's father, possession of the strip of land in dispute was not adverse, because a tenant cannot hold adversely to his landlord. See Section 28–01–12, N.D.C.C. The trial court so held. However, it appears to us that the trial court overlooked the fact that the defendant and his predecessor had been in possession of this strip for a period of more than 20 years before the relationship of landlord and tenant of the haylands came into existence. We find that no demand had been made upon the defendant for possession of the strip of land in dispute until 1964 or 1965, after the plaintiff in this action acquired the land from his brother, who in turn had acquired it from this plaintiff's father. Plaintiff's father testified that he had made no claim or demand upon the defendant that the line claimed by the defendant was not the true boundary line, although he also testified that he had a feeling the boundary claimed by the defendant was not the true boundary.

We are of the opinion that the boundary line between the Southeast Quarter of Section 9 and the Southwest Quarter of Section 9 was established by acquiescence of the parties and their predecessors and grantors. Bernier v. Preckel, supra.

Section 28–01–05, N.D.C.C., provides as follows:

No cause of action, or defense, or counterclaim to an action founded upon the title to real property, or to rents or service out of the same, shall be effectual unless it appears that the person prosecuting the action or interposing the defense or counterclaim, or under whose title the action is prosecuted or the defense or counterclaim is made, or the ancestor, predecessor, or grantor of such person, was seized or possessed of the premises in question within twenty years before the committing of the act in respect to which such action is prosecuted or such defense or counterclaim is made.

This action was commenced in June 1965, and the plaintiff has wholly failed to prove either possession or seizin, actual or constructive, of any part of a strip of land located between the survey line as established by the surveyor and the rock line described herein as required by Section 28–01–05, supra. On the contrary, the evidence establishes that this strip was in the actual

adverse possession of the defendant and his predecessor for more than 40 years before the commencement of the action, and more than 20 years before the relationship of landlord and tenant came into existence.

We will now consider the dispute of the north boundary of the Southeast Quarter of Section 9. The plaintiff is the undisputed record owner of the Northeast Quarter of Section 9. It appears from the evidence that a road or trail running east and west is now and has been for the past many years located a short distance north of the boundary between the Southeast and Northeast Quarters of Section 9. The evidence does not disclose the distance that this road or trail was located from said quarter line. However, it does appear that the defendant has for a number of years been cultivating land north of the quarter line as established by the survey. The evidence indicates this strip of land consists of one acre at the present time. Thus it appears that the strip of land in dispute is one-half mile long and one rod in width. We have examined the evidence in support of the defendant's contention that the statute of limitations, Section 28–01–05, N.D.C.C., is also applicable to plaintiff's action in relation to this strip of land. We do not find the evidence in this respect preponderates in favor of the defendant.

■ It appears the road or trail in question has existed for more than 20 years before this action was commenced, but the record does not establish it has continued to be in one place. The land has been cultivated on both sides of it. The path of travel has moved from time to time, dependent upon the amount of moisture and the condition of the road. It also appears that the east end of the road jogs toward the south before it continues eastward into the next section. There is no evidence that this road or path was acquiesced in as being the boundary line between the two quarter sections, nor is there any evidence to indicate that there was acquiescence in establishing the road as a boundary line nor that it was

the intention of the defendant to claim the strip of land adversely. It appears the defendant has gradually been encroaching upon plaintiff's land by plowing so close to the road each year that it gradually moved northward. However, the record does not establish how much the road has been moved, nor how long the defendant has encroached upon the plaintiff's land in this manner. We are unable to find from the record how long the defendant has possessed and occupied any particular amount of plaintiff's land. The burden is on the one claiming property by adverse possession to prove his claim by clear and convincing evidence, and every reasonable intendment will be made in favor of the true owner. Rovenko v. Bokovoy, 77 N.D. 740, 45 N.W.2d 492. We find the defendant has failed in the required proof.

■ The next issue involves a dispute over the use of a road or trail which diagonally crosses the Northwest Quarter of Section 9. This has been used by the defendant and his father, since the father acquired the land in 1902, for the purpose of traveling to and from the farmstead and other lands, and the Southeast Quarter of Section 9. This road or trail runs from a point near the northwest corner of the Northwest Quarter, following the higher ground, to a point near the center of the section. The defendant contends this road or trail has become a public road by prescription.

Section 24–07–01, N.D.C.C., provides:

All public roads and highways within this state which have been or which shall be open and in use as such, during twenty successive years, hereby are declared to be public roads or highways and confirmed and established as such whether the same have been laid out, established, and opened lawfully or not.

After the dispute arose between these parties over the boundaries heretofore discussed, the plaintiff erected a fence along the west line of the West Half of Section 9. At the point where the road enters the Northwest Quarter he installed a gate,

which he padlocked, and denied the defendant the use of the road. The defendant has attempted to establish that the road has been used by the public for more than 20 years, but we find he has failed in this respect. The evidence fails to establish that the use has been adverse and hostile to the rights of the owners. The plaintiff's father, who owned the land since 1943 and until a short time before the commencement of this action, testified that the road was kept open for the convenience of himself and others who wished to use it, and that the use had been permissive. Further, the evidence does not establish public use of the road. It merely establishes it had been used by plaintiff's family, by the defendant, by an occasional hunter who hunted in the several sloughs located upon Section 9, by people on occasion who wished to ski on the hills located on the land, and by a mechanic who used it on about four occasions in going to and returning from a neighboring farm to repair an engine. The road is described as a trail; it is unimproved, and little more than a path. The burden of proof is upon the plaintiff to sustain by clear, convincing and satisfactory evidence the prescriptive use. It clearly appears that the roadway or trail was a mere neighborhood road used by people in the immediate area for the purpose of going upon the land, and not to travel across the land. It was used mostly by the owners of the land in Section 9. It was in no sense a thoroughfare or part of an acknowledged highway.

We held in Berger v. Berger, N.D., 88 N.W.2d 98, that a mere user by the public is insufficient of itself to establish a road by prescription or long use in the absence of clear and convincing evidence that the use was adverse and hostile to the rights of the owner; that regardless of how long it is continued, user by permission or license of the owner of land sought to be impressed with a public easement of travel is not adverse and affords no basis for prescription. There is no evidence in this record that establishes a hostile use before the defendant's father acquired the land. The record

also establishes the use has been permissive after he acquired the land in 1943. Therefore the plaintiff had the right to revoke the permissive use of this trail when he so desired. The defendant has not established a road by prescription.

Each of the parties also makes claim against the other for damages for trespass. We have examined the evidence, and it appears in view of our decision as to the rights of the respective parties to the lands, that these damages balance. The plaintiff testified he was damaged by the defendant's trespass upon the one acre, a part of the plaintiff's Northeast Quarter of Section 9, for the two-year period which plaintiff has owned this land, in the amount of $50.00, plus $40.00 for loss caused by removal of the stakes the plaintiff placed to show the location of the survey line, or total damages of $90.00. The defendant testified he was damaged because of the plaintiff's wrongful use of the three acres adjoining the west line of the Southeast Quarter up to the rock line because defendant had placed a fence along the line established by the surveyor and had plowed the ground and sowed the same to alfalfa and oats. The defendant removed the fence, retained the fence posts, and left the wire on the land, and claims he suffered damage for the reason that he was not able to crop the land in 1965. He testified this loss amounted to $90.00. The evidence as to the amount of damages testified to by each party is uncontradicted. We find that they offset each other except for the plaintiff's fence posts, which the defendant retained, and which fence posts we feel the defendant should return to the plaintiff.

Thus the judgment of the court in favor of the plaintiff is modified to the extent that the plaintiff's east boundary line of the Southwest Quarter of Section 9 is established as being the rock line described in the opinion, and damages are not allowed to either party. Costs are not allowed to either party in the Supreme Court.

STRUTZ, KNUDSON, ERICKSTAD and MURRAY, JJ., concur.