PRODUCTION CREDIT ASSOCIATION
OF MANDAN, a corporation, Plaintiff,

v.

TERRA VALLEE, INC., a corporation,
Defendant-Appellant,

and

Barry Davis, Esther Davis,
Defendants-Appellees,

and

Kenneth R. Porsborg and all other per-
sons unknown claiming any estate in or
lien in or encumbrance upon the proper-
ty described in the Complaint, Defend-
ants,

Lloyd G. Lohstreter, Betty D. Lohstreter,
Kenneth M. Lohstreter, and Leona
Lohstreter, Intervenors-Appellees.

Civ. No. 9845.

Supreme Court of North Dakota.

Feb. 24, 1981.

Joseph A. Vogel, Jr., Mandan, argued for defendant–appellant, Terra Vallee, Inc.

Kelsch & Kelsch, Bismarck, for defendants-appellees, Barry Davis and Esther Davis, and intervenors-appellees, Lloyd G. Lohstreter, Betty D. Lohstreter, Kenneth M. Lohstreter, and Leona Lohstreter; argued by Robert P. Bennett, Bismarck.

ERICKSTAD, Chief Justice.

The appellant, Terra Vallee, Inc., appeals from the order for judgment, the judgment, and the order amending judgment entered by the District Court of Morton County which granted summary judgment to the appellees, Barry and Esther Davis and Lloyd, Betty, Kenneth and Leona Lohstreter, quieting title in them and dismissing Terra Vallee's cross claim. We affirm.

This appeal involves a misplaced quarter corner in Section 21, Township 139 North, Range 81 West of the Fifth Principal Meridian. The "old" quarter corner was established by a county survey in 1928. A subsequent private survey in 1975 revealed that the old quarter corner was 23 feet east and 26 feet south of the true quarter corner. The new (correct) quarter corner, when extended south, divides section 21 into east and west halves. The State owns a right of way running east to west through section 21. This dispute is over the strip of land which was originally thought to belong to the northwest quarter of section 21 but has now been established as belonging to the northeast quarter of section 21. This strip of land is approximately 23 feet wide and 575 feet long.

This action was originally commenced by Production Credit Association (PCA) to quiet title to auditor's lot three. Its complaint described a parcel of land whose west border line was 23 feet east and roughly parallel to the north quarter line of section 21. This lot was originally platted according to the old quarter corner. PCA's quiet title action sought only to quiet title to the parcel it had assumed it owned based upon the old quarter corner. No party opposed its assertion of ownership of auditor's lot three based upon the old quarter corner.

The Davises admitted PCA's ownership of auditor's lot three based upon the old quarter corner and crossclaimed against Terra Vallee asserting ownership to the 23-foot strip of land which Terra Vallee claimed. The Lohstreters intervened and also claimed ownership of the strip of land, as they were the title owners of the northwest quarter of section 21 and had entered into a contract for deed with the Davises, granting the Davises their interest in the northwest quarter based upon the new quarter corner.

Terra Vallee asserted that it owned the 23-foot strip of land as it was the title owner of auditor's lot two which was the entire northeast quarter less auditor's lot three. As auditor's lot three, as quieted in PCA, was based upon the old quarter corner, Terra Vallee asserts that this left the 23-foot strip of land between auditor's lot three and the northwest quarter as part of lot two.[1]

---

1. Actually, the so-called 23-foot strip of land is described more accurately as follows:

"All that part of the NW¼NE¼ of Section 21, Township 139, Range 81 that lies within

The Lohstreters and Davises moved for summary judgment based upon the doctrine of acquiescence. This motion was granted by the trial court. The trial court held that it was undisputed that a fence had been erected using the old quarter corner, when extended south, as the line. The fence had been in existence since 1948 or 31 years prior to the lawsuit. Under the circumstances, the trial court held the doctrine of acquiescence to be applicable and quieted title to the strip in the Lohstreters and Davises.

Terra Vallee admitted it had not been seized nor possessed of the strip of land within 20 years. The trial court then determined that, pursuant to Section 28–01–05, N.D.C.C.,[2] Terra Vallee was not entitled to defend against the Lohstreters' and Davises' cross claim asserting ownership.

Terra Vallee raises the following issues as the basis of its appeal:

1. Does a quarter corner as established by the original government survey supersede a quarter corner subsequently established by an erroneous survey?

2. Does the doctrine of acquiescence have application where the intervenors, alleging and relying upon mutual assent to establish the "old" quarter corner and quarter-section lines, subsequently sell the property using the "new" quarter corner to describe the same property?

3. Does the doctrine of acquiescence have application where both parties are mutually mistaken as to the location of a quarter corner erroneously established by a survey?

4. Does estoppel apply estopping the intervenors from establishing the "old" quarter corner as the true boundary in claiming ownership to the 23-foot strip of land pursuant to the actual and constructive notice they received in accordance with the provisions of the Survey Corner Recordation Act of North Dakota, Chapter 47–20.1, North Dakota Century Code, and the subsequent conveyance using the "new" quarter corner for the description?

5. Is the Lohstreters' quiet title action of 1953 to the W½ of Section 21 res judicata as to the issues involved herein?

## I. LIMITATION OF ACTION

Lohstreters assert that, pursuant to Section 28–01–05, N.D.C.C., Terra Vallee has no effectual cause of action, or defense, or counterclaim for the strip of land, as it has not been seized nor possessed of the premises within 20 years. We agree.

Terra Vallee entered into a contract for deed with Rodney and Sally Ritz in 1974 for auditor's lot two. A warranty deed was issued pursuant to this contract for deed in 1976. Terra Vallee received:

"Auditor's Lot Two (2), less Auditor's Lot Three (3), according to the replat of said Lot Three (3), of the Northeast Quarter (NE¼) of Section Twenty-one (21), in Township One Hundred Thirty-nine (139) North, of Range Eighty-one (81) West of the Fifth Principal Meridian, and less that portion of Auditor's Lot Two (2)

and is bounded by the following described traverse:

"Beginning at the Northwest (NW) corner of the Northeast Quarter (NE¼) of Section Twenty-One (21), Township One Hundred Thirty-Nine (139) North, Range Eighty-One (81) West; thence due East along the North section line of Section 21, Township 139 North, Range 81 West, a distance of 23 feet; thence bearing S00°01′52″E, a distance of 571 feet, more or less, to the North Railway line of the Old Red Trail; thence bearing S89°58′08″W a distance of 29.04 feet; thence bearing N00°38′28″E, a distance of 571.51 feet, to the point of beginning,"

2. "28–01–05. Actions founded upon title to real estate or to rents or services therefrom—Limitations.—No cause of action, or defense, or counterclaim to an action founded upon the title to real property, or to rents or service out of the same, shall be effectual unless it appears that the person prosecuting the action or interposing the defense or counterclaim, or under whose title the action is prosecuted or the defense or counterclaim is made, or the ancestor, predecessor, or grantor of such person, was seized or possessed of the premises in question within twenty years before the committing of the act in respect to which such action is prosecuted or such defense or counter-claim is made." § 28–01–05, N.D.C.C.

previously conveyed to the State of North Dakota and to Montana-Dakota Utilities Company, ..."

Auditor's lot two (lot two) is all that land in the northeast quarter of section 21 lying north of the State's right of way, less auditor's lost three. Thus by definition, lot two begins at the quarter corner located in the northwest corner of the northeast quarter of section 21.

To aid the reader, we herewith attempt to set forth a diagram of the pertinent parcels of land as they are generally situated and not to scale.

The description of auditor's lot three reads in part:

"Said tract of land being part of Auditor's Lot 2 of the Northeast Quarter of said Section 21, Beginning at the North Quarter corner of said Section 21, said *point also being the Northeast* [Northeast is obviously in error and should read Northwest] *corner of Auditor's Lot 2 of the Northeast Quarter of said Section 21,* ..." Recorded plat of auditor's lot three recorded 1965.

■ By description, auditor's lot three extends from the north quarter corner of Section 21, 356 feet east, thence south 839.1 feet, thence northwesterly 383.9 feet,

thence north 693.55 feet to the point of beginning. The description of the land owned by Terra Vallee specifically excludes lot three. Thus, it is clear that, in reference to the old quarter corner, Terra Vallee did not have title to any land lying along the boundary between the northwest and northeast quarter of section 21. If Terra Vallee had any claim to property arising out of the erroneous survey of 1928, it was to a strip of land adjacent to the east line of auditor's lot three. Instead, they are asserting an interest in a strip of land adjacent to the west line.

When the true quarter corner was established, this did not change the land descrip-

tions. Auditor's lot three still began at the north quarter corner of section 21 wherever that quarter corner was properly located. Terra Vallee had no title and was not seized nor possessed of the 23-foot strip within the last 20 years. Therefore, pursuant to Sections 28–01–04[3] and 28–01–05, N.D.C.C., Terra Vallee was not entitled to either maintain an action to quiet title nor to defend against Lohstreters' and Davises' quiet title action.

PCA, as owner of auditor's lot three, is the party whose title description contains the 23-foot strip of land, as the new quarter corner places the land in the northeast quarter of section 21 and the property description granted to it began at the quarter corner.

 The original government survey established the location of the quarter corner. No subsequent county or private survey can change the proper location of the quarter corner. *Wojahn v. Johnson,* Minn., 297 N.W.2d 298, 303 (1980). Thus, the new quarter corner which is in the proper location must govern title to land, as that land is described in conveyances and the records. While the quarter corner is established, the boundary may be varied by acquiescence. *Davis v. Hansen,* 224 N.W.2d 4, 6 (Iowa 1974).

We affirm the trial court's determination that Terra Vallee was not entitled to maintain or defend an action quieting title in the strip of land.

In the interest of justice and judicial economy, we will now attempt to determine whether or not title to the contested strip of land should be quieted in the Lohstreters and the Davises. *Dahl v. City of Grafton,* 286 N.W.2d 774, 778 (N.D.1979).

## II. DOCTRINE OF ACQUIESCENCE

The only other party which has an interest in the strip of land is PCA. PCA originally brought the present action to quiet title in itself to auditor's lot three based on the old quarter corner. This was granted and no appeal was taken by any of the parties from that order. The question resolves itself into who owns the 23 feet on the quarter line which divides the east half from the west half of section 21.

In an affidavit, Ralph Heck, who purchased auditor's lot two which included auditor's lot three in 1948, stated that a fence was on the assumed line separating the northwest quarter and the northeast quarter of section 21, based on the old quarter corner. Heck stated he was told the fence went with auditor's lot two and he maintained it until 1965 when he sold the land to the Resslers. The fence is still in the same location as it was in 1948, running south from the old quarter corner which was marked by an iron pipe monument. It is further undisputed that the strip was unimproved and the only use made of the strip by the Lohstreters was to occasionally cut hay upon the strip. The trial court granted the summary judgment quieting title to the Lohstreters and Davises pursuant to the doctrine of acquiescence. We affirm.

 The doctrine of acquiescence evolved from the doctrine of adverse possession.

"The doctrine of acquiescence is a supplement to the older and harsher rule of adverse possession which held that adverse intent was the first prerequisite of adverse possession. This meant that in order for the adverse possessor to start the 20-year period running, he must commence his possession with knowledge that the land he was encroaching upon was not his and with an intent to dispossess the true owner. This meant that one who occupied part of his neighbor's land, due to an honest mistake as to the location of his boundary, could never start the statute running because he never formed the requisite adverse intent.

3. *"28–01–04. Actions for recovery or possession of real property—Limitations—*No action for the recovery of real property or for the possession thereof shall be maintained, unless the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within twenty years before the commencement of such action." § 28–01–04, N.D.C.C.

"The harsh result of this rule soon became apparent in many jurisdictions and courts began to hold that land could be acquired by adverse possession, even though adverse intent was absent, if the true owner acquiesced in such possession for a period of 20 years. It is important to note that initially the period of time required for adverse possession continued to be 20 years even when the acquiescence version of the doctrine was applied." *Buza v. Wojtalewicz*, 48 Wis.2d 557, 180 N.W.2d 556, 559 (Wis.1970).

A review of the doctrine of acquiescence reveals that there is little uniformity among the states in its application and requirements. Some states have said that the doctrine is similar to an estoppel. *Buza v. Wojtalewicz, supra*, 180 N.W.2d at 561. Under an estoppel in pais theory, however, North Dakota has four requirements: (1) That the party sought to be estopped be apprised of the true state of his own title, (2) that there was an intent to deceive or such carelessness and culpable negligence as to amount to constructive fraud, (3) that the other party be not only destitute of all knowledge of the true state of title, but of the means of acquiring that knowledge, and (4) that the person seeking estoppel detrimentally relied upon the admission. *See Gilbertson v. Charlson*, 301 N.W.2d 144 (N.D.1981). This would appear to require knowledge of the true boundary line, but the Supreme Court of Minnesota held that knowledge of the true boundary was not required when establishing a boundary line by acquiescence. *Fishman v. Nielsen*, 237 Minn. 1, 53 N.W.2d 553 (1952). We agree with what the Supreme Court of Minnesota said in *Fishman*:

"We can find no reason for this requirement of knowledge of the true boundary line in our review of decisions in other states, and we can see no practical reason here why it should be a prerequisite to establishing a practical boundary line by acquiescence. If it is true that knowledge of the true boundary line would be a prerequisite to establishing a practical boundary by acquiescence, we can see little or no reason why there should be an

occasion for establishing a practical boundary by acquiescence, inasmuch as it seems logical that a fence such as the one in question would have been placed on the true boundary line if all the parties concerned knew exactly where such a line was at the time the fence was constructed." 53 N.W.2d at 557.

The doctrine of acquiescence has been applied in at least two cases in North Dakota. *Bernier v. Preckel*, 60 N.D. 549, 236 N.W. 243 (1931); *Trautman v. Ahlert*, N.D., 147 N.W.2d 407 (1966). In *Bernier*, this court applied Section 7362, S.L. 1913, the predecessor of Section 28–01–04, N.D.C.C. The court determined that only the defendant had held the property in dispute for more than 20 years and hence the plaintiff was not entitled to maintain an action to recover an 11-foot strip of land between a fence maintained by the defendants and the actual boundary separating the plaintiffs' and defendants' city lots. This court, in holding that the boundary was established by acquiescence of the parties said:

"In order to establish a boundary by acquiescence, it is not necessary that the acquiescence should be manifested by a conventional agreement, but mutual recognition is necessary. Aside from this what constitutes an acquiescence of recognition of a boundary line depends on the words or declarations of the parties interested, on their silence, or, as is more frequently the case, on inference or presumptions from their conduct." *Bernier v. Preckel, supra*, 236 N.W. at 247.

In *Trautman v. Ahlert, supra*, 147 N.W.2d 407, this court applied Section 28–01–05, N.D.C.C., to determine that a strip of land between a rock line the defendant's predecessor had established and the true boundary line had not been seized or possessed by the plaintiffs within the previous 20 years. The court held that the boundary was established by acquiescence of the parties in the rock line as the boundary for more than 20 years. 147 N.W.2d at 412–13. We, however, held that the doctrine of acquiescence did not apply to a road or trail which ran near the defendants' north boundary, as

there was no evidence that the parties had acquiesced in the road as being the boundary. It also appeared that the road tended to migrate, depending upon weather conditions and encroachment by defendant plowing so close to the road as to move the road further onto plaintiffs' land. 147 N.W.2d at 413.

Thus, from these cases, we conclude that to establish a new boundary line, it must be acquiesced in by the parties as the boundary between their lands for at least 20 years. Notwithstanding this conclusion, we recognize that some states allow exceptions to the rule that acquiescence in boundaries must be for a period of time equal to the statute of limitations. *Beasley v. Konczal*, 87 Wis.2d 233, 275 N.W.2d 634, 640 (1979); *Wojahn v. Johnson, supra*, 297 N.W.2d at 304.

An owner of property does not acquiesce in a fence as a boundary merely because he builds the fence upon his own property and not upon the property line. *Foos v. Reuter*, 180 Neb. 301, 142 N.W.2d 552, 556 (1966). The intent must have been to establish the fence as the boundary, not a mere barrier between the properties. *O'Dell v. Hanson*, 241 Iowa 657, 42 N.W.2d 86, 89–90 (1950).

In *Beasley, supra*, 275 N.W.2d at 640, the Supreme Court of Wisconsin said that boundaries may be established by:

(1) Acquiescence for the period of time equal to the statute of limitations.

(2) Express agreement of the parties when a boundary is established pursuant to a dispute and long acquiescence even if such period falls short of the statutory 20 years.

(3) Both parties taking from a common grantor with reference to a marked boundary which was shown to them.

(4) Building a fence in reliance on a survey and acquiesced in for a period of years where there is no competent evidence showing the true boundary line to be different from the fence line. 275 N.W.2d at 640.

In *Wojahn, supra*, 297 N.W.2d at 304, the Supreme Court of Minnesota said:

"The practical location of a boundary line can be established in one of three ways:

(1) Acquiescence: The location relied upon must have been acquiesced in for a sufficient length of time to bar a right of entry under the statute of limitations.

(2) Agreement: The line must have been expressly agreed upon by the interested parties and afterwards acquiesced in.

(3) Estoppel: The party whose rights are to be barred must have silently looked on with knowledge of the true line while the other party encroached thereon or subjected himself to expense which he would not have incurred had the line been in dispute."

Perhaps of more significance to us is what we have said in *Odegaard v. Craig*, 171 N.W.2d 133 (N.D.1969):

"It is our opinion that nothing short of acquiescence for the statutory period required for acquisition of title by adverse possession will establish a boundary line by acquiescence." 171 N.W.2d at 137.

In *Odegaard*, what we said was dictum, but, in any case, we did not require that the parties have actual knowledge of the true line and acquiesce in another. We see no compelling reason to engraft a requirement of knowledge to the doctrine of acquiescence.

Additionally, a boundary may always be established by estoppel where the requirements of estoppel in pais are met. *See Charlson v. Gilbertson*, 301 N.W.2d 144 (N.D.1981). In the case at bar, the facts plainly show that the fence was placed upon what was believed to be the boundary as determined by the county survey of 1928. In fact, the fence extends south from the north quarter corner established by that survey. It is clear that the parties believed the fence to be on the boundary line separating their property. When a fence is established as a boundary pursuant to a survey, and acquiesced in for the statutory 20-year period of time, that fence will be

deemed to be the boundary line even if there is evidence to indicate that the true boundary is in a different location. *Nagel v. Philipsen*, 4 Wis.2d 104, 90 N.W.2d 151, 154 (1958). Acquiescence may be found from a party's silence, or inferred from their conduct. *Bernier v. Preckel, supra*, 236 N.W. at 247.

In this case, the fence was placed on what the parties believed to be the boundary line. Such intent is one of the most important factors under an acquiescence theory. *Wojahn v. Johnson, supra*, 297 N.W.2d at 305. The fence stood as such a boundary since at least 1948, which is well in excess of the 20-year statute of limitations. None of PCA's predecessors appears to have disputed or challenged the establishment of the fence as the boundary; rather, it was one of those predecessors who built the fence. The Lohstreters and Davises have been in constant possession or control of the strip of land for more than 20 years.

■ The Lohstreters and Davises are not estopped from asserting the doctrine of acquiescence merely because their contract for deed used the new quarter corner as the basis for the land description, as the contract between them was entered into in 1976 and the boundary had been established by the doctrine of acquiescence prior to that time.

Therefore, we agree with the trial court's determination that the fence was established as the boundary between the northwest and northeast quarters by the doctrine of acquiescence. The court's judgment and the order amending the judgment are affirmed.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.