Bennie MANZ and Irene Manz,
Plaintiffs and Appellees,

v.

Fred BOHARA, Violet Bohara,
Defendants and Appellants,

and

Hulda Rathjen, Defendant.

Civ. No. 10700.

Supreme Court of North Dakota.

April 17, 1985.

Bair, Brown & Kautzmann, Mandan, for plaintiffs and appellees; argued by Bruce B. Bair.

Evans & Moench, Bismarck, for defendants and appellants; argued by David L. Evans.

ERICKSTAD, Chief Justice.

This appeal involves a boundary dispute between the parties, who farm adjoining land in Sheridan County. Fred and Violet Bohara appeal from the judgment of the district court quieting title to a strip of land located in Lot 2 and the Southwest quarter of the Northeast quarter (SW¼NE¼) of Section 4, Township 148 North, Range 78 West of the 5th Principal Meridian, Sheridan County, North Dakota, in favor of Bennie and Irene Manz.

Hulda Rathjen is the record title owner of Lots 1 and 2, and the S½NE¼ and the SE¼ of Section 4, subject to an unrecorded contract for deed in favor of Fred and Violet Bohara dated April 17, 1965. Bennie and Irene Manz, as joint tenants with the right of survivorship, are the record title owners of Lots 3 and 4, and the S½NW¼ of Section 4 by virtue of a warranty deed dated October 2, 1956. The Manzes brought an action to quiet title to a strip of land located east of the true boundary line separating Lot 3 and the SE¼NW¼ of Sec-

tion 4, and Lot 2 and the SW¼NE¼ of Section 4, as established in a 1981 survey; bounded on the west by the survey line, and on the east by a line which the Manzes alleged in their complaint "was marked by rock piles and acquiesced to for a period of over 20 years as the east boundary between the property owned by the Plaintiffs, and their predecessors in title, and the Defendants, and their predecessors in title."

Subsequent to trial the district court, sitting without a jury, quieted title to the following described real estate in favor of the Manzes, on the basis of the doctrine of acquiescence:

"Beginning at the north quarter corner of Section 4, Township 148 North, Range 78 West of the 5th Principal Meridian, Sheridan County, North Dakota; thence east along the section line 80 feet; thence southerly 520 feet to a point that is 40 feet east of the quarter line; thence southerly 220 feet to a point that is 60 feet east of the quarter line; thence southerly 240 feet to a point that is 20 feet east of the quarter line; thence

southerly 230 feet to a point that is 20 feet east of the quarter line; thence southerly 530 feet to a point that is 70 feet east of the quarter line; thence southerly 135 feet to the quarter line; thence north along the quarter section line 1875 feet to the point of beginning, containing 1.95 acres, more or less."

This description, denominated by the trial court as "the property lying between the land use line and the true line," was prepared by Larry Bushey, a registered land surveyor, along with an exhibit entitled "Photogrammetric survey of the east line of land use by Manz in 1960," which was based on a July 19, 1960 aerial photograph of the disputed area. Bushey ascertained the location of the land use line by the "different colored shading between different fields" shown on the photograph. This exhibit, which we have set forth in its entirety, reveals the location of the 1960 land use line which the trial court orally found was "the line that was recognized for the period of 1930 to 1965."

Photogrammetric survey of the east line of land use by Manz in 1960

These measurements were taken from the ASCS aerial photograph Number BAN-2AA-7 dated 7-19-60.

DESCRIPTION:

Beginning at the north quarter corner of Section 4, Township 148 North, Range 78 West of the Fifth Principal Meridian, Sheridan County, North Dakota; thence east along the section line 80 feet; thence southerly 520 feet to a point that is 40 feet east of the $\frac{1}{4}$ line; thence southerly 220 feet to a point that is 60 feet east of the $\frac{1}{4}$ line; thence southerly 240 feet to a point that is 20 feet east of the $\frac{1}{4}$ line; thence southerly 230 feet to a point that is 20 feet east of the $\frac{1}{4}$ line; thence southerly 530 feet to a point that is 70 feet east of the $\frac{1}{4}$ line; thence southerly 135 feet to the $\frac{1}{4}$ line; thence north along the $\frac{1}{4}$ section line 1875 feet to the point of beginning, containing 1.95 acres, more or less.

*[Larry Bushey drew in the two rock piles depicted on this exhibit. He testified, however, that the rock pile located directly on the land use line should have probably been shown to be east of the land use line.]

Not to scale
11-16-83
Larry Bushey

The Boharas assert on appeal that the trial court erred in finding for the Manzes on their claim of acquiescence. The court found as fact that:

"During the period 1930 to 1965, the actual land use line between the properties ... goes east of the true line. During that period of time, the land use line was recognized by all the owners and tenants on both sides of the line, which land use line was marked by three rock piles.

"The land use line marked by rock piles was used by occupants on both sides of the line to place rocks on and was recognized by the owners on both sides of the line as the common boundary line between the properties.

"A new highway was built in about 1962 and the approach to the new highway between the properties was placed on the land use line marked by the rock piles rather than on the true line.

"From the period of 1965 through 1976, the Defendants, Fred Bohara and Violet Bohara, continued to recognize the land use line marked by the rock piles.

\* \* \* \* \* \*

"In the Fall of 1981 the Defendants, Fred Bohara and Violet Bohara, erected a fence on the true line and used the property between the true line and the land use line for agricultural purposes during the 1982 and 1983 farming seasons."

The Boharas assert that there exists no evidence of the mutual recognition by the parties of a boundary at any one location. They also assert that the Manzes failed to prove by clear and convincing evidence that the land use line referred to by the trial court and established by the photogrammetric survey, is the actual recognized boundary. The Boharas argue that the land use line is nothing more than a barrier that moves back and forth depending upon the parties' farming practices.

We discussed the doctrine of acquiescence at length in *Production Credit Association of Mandan v. Terra Vallee, Inc.*, 303 N.W.2d 79 (N.D.1981), and concluded from a review of our prior decisions [see *Trautman v. Ahlert*, 147 N.W.2d 407 (N.D.1966); *Bernier v. Preckel*, 60 N.D. 549, 236 N.W. 243 (1931)], that "to estab-

lish a new boundary line, it must be acquiesced in by the parties as the boundary between their lands for at least 20 years." 303 N.W.2d at 85. Both parties must have knowledge of the existence of a line as a boundary line, but knowledge of the true boundary line is not required when establishing a boundary line by acquiescence. *Id.* at 84.

" 'In order to establish a boundary by acquiescence, it is not necessary that the acquiescence should be manifested by a conventional agreement, but mutual recognition is necessary. Aside from this what constitutes an acquiescence or recognition of a boundary line depends on the words or declarations of the parties interested, on their silence, or, as is more frequently the case, on inference or presumptions from their conduct.' " *Bernier v. Preckel*, 236 N.W. at 247, quoting 9 C.J. page 246, § 198. *See Ward v. Shipp*, 340 N.W.2d 14, 16 (N.D.1983); *Production Credit Association of Mandan v. Terra Vallee, Inc.*, 303 N.W.2d at 84.

In applying the doctrine of acquiescence, courts have generally held that the line acquiesced in must be definite, certain and not speculative, and open to observation. 2 H. Tiffany, *The Law of Real Property* § 654 (3rd Ed.). *See, e.g., Drake v. Claar*, 339 N.W.2d 844, 847 (Iowa App.1983) ["Adjoining landowners may establish a boundary line by mutually acquiescing in a dividing line definitely marked by a fence or some other manner...."]; *Glover v. Graham*, 459 A.2d 1080, 1084 n. 8 (Me.1983) [Obtaining title to property by the doctrine of acquiescence requires, in part, "possession up to a visible line marked clearly by monuments, fences or the like."]; *Fuoco v. Williams*, 18 Utah 2d 282, 421 P.2d 944 (1966) [A ditch, constantly subject to shifting or obliteration by erosion, weeds or cleaning and which was originally established by plowing two furrows down an open field for purposes of irrigation held not to constitute a boundary by acquiescence.] The claimed line must also have been recognized as a boundary,

and not as a mere barrier. *Terra Vallee*, 303 N.W.2d at 85.

We have carefully reviewed the entire record to determine if the trial court's findings of fact regarding the mutual recognition of a boundary by the parties and their predecessors in title are clearly erroneous. *See Ward v. Shipp*, 340 N.W.2d at 16; Rule 52(a), N.D.R.Civ.P. A finding of fact is clearly erroneous if it was induced by an erroneous view of the law. *Stee v. "L" Monte Industries, Inc.*, 247 N.W.2d 641, 644 (N.D.1976). In our view, the trial court has made a mistake in finding that the evidence establishes a boundary by acquiescence.

It can be gleaned from the record that in the past there existed three rock piles located east of the true boundary line, which were referred to by the parties as the north, middle, and south rock piles. Although the record is not entirely clear, at least two sloughs existed in the vicinity of the rock piles, one of which would become dry during the summer months and was capable of being hayed, and another which was normally too wet to farm. Testimony was also elicited regarding a buggy trail, trail, or road which ran between the rock piles. The trial court apparently determined that this road or trail constituted the "actual land use line" which the court found was marked by the three rock piles and recognized as the boundary by the owners between 1930 and 1965.

Bennie Manz, born in 1921, testified that his parents acquired Lots 3 and 4, and the S½NW¼ of Section 4 in 1925. In 1947 Bennie's parents executed a trust deed which entitled Bennie to possession of the real estate and, pursuant to the terms of the trust deed, Bennie acquired the deed to Lots 3 and 4, and the S½NW¼ of Section 4 in 1956. Bennie testified that he has been familiar with the boundary line between Lot 3 and the SE¼NW¼ of Section 4, and Lot 2 and the SW¼NE¼ of Section 4 since about 1930. He testified that the boundary line was marked by three rock piles and that "[t]hat's the way the former owners had marked it before my Dad bought it."

He testified that a "buggy trail" had existed between the rock piles; the north rock pile was removed during a reconstruction of the section line road; an approach was constructed where the north rock pile was previously located; the middle rock pile could be twenty-five to thirty feet wide; and rocks were placed on the rock piles by parties on both sides of the adjoining properties. Bennie also testified that the trail between the rock piles was native prairie, and that he had farmed to within five feet of it. He testified that the Boharas cultivated the trail in 1978.

Bennie testified that from 1930 to 1956, Lot 2 and the SW¼NE¼ of Section 4 was owned by the Parmenter family and was farmed by John Dockter, Edwin Schott, and George Mack. The property was then sold in 1957 to Emil and Hulda Rathjen and farmed by Clarence Weidrich. Bennie testified that the boundary marked by the three rock piles was recognized as the boundary line between his parents, and the Parmenters and John Dockter. He also testified that after 1947 the rock pile line was recognized as the boundary line between himself and John Dockter, Edwin Schott, George Mack, Clarence Weidrich, and the Parmenters. Bennie further testified that there was no dispute between the various farmers and owners concerning the rock pile boundary line from 1930 to 1965. He testified, "Parmenter told me all about it, that him and Walz (apparently George Walz, a prior owner of Lot 3 and the S½ NW¼ of Section 4), they had measured that out, and they said rock piles would make the line, dividing line."

Violet Schott, born in 1924, is the daughter of John Dockter. Violet testified that as a young girl she and her family lived on and farmed the northeast quarter of Section 4. Violet remained on the farm until she was married in 1943, and thereafter resided four miles northwest of the farm until 1968. Violet testified that the boundary line adjoining the properties was marked "with rocks and a trail"; however, she also testified that she "went by the road" when helping her husband farm. Violet agreed that the "rock pile-trail" was recognized as the boundary line between the properties by all the owners and farmers on both sides; that the people to the east stayed on the east side of the trail and the people to the west stayed on the west side of the trail from 1934 to the 1960's. She testified that the trail did not change during the period that her family farmed the land and that the trail still existed, unchanged, in 1968.

Bennie's son, Terry Manz, has been farming with his father since about 1960. Terry testified that in 1960 the boundary line between the properties was marked by rock piles and a trail "wide enough for a truck to get in and out." Terry testified that the trail ran on the west side of the dry slough. He agreed that he crossed over to the east side of the trail to hay, and that there was not a set point "on that slough part" that the Manzes and the Boharas would farm to each year. Bennie testified, however, that he hayed the slough to the rock pile boundary line. In this light, Violet agreed that the "road" was used for the purposes of establishing a crop boundary line, but not a hay boundary line as she was sure there were times when the road was crossed to cut hay. She also testified, however, that she did not remember where the hay was located or cut. Bushey testified that in drawing the 1960 land use line, if he were to assume that Bohara was haying the slough, the land use line would be drawn to the west of the slough and west of the true boundary line.

Terry testified that the rock pile and trail boundary line was observed until the spring of 1981, when a dispute arose over the Boharas' cattle grazing on the Manzes' alfalfa field. He testified that the Boharas began staking out a line and "it looked like ... they were going to put up a fence." The Manzes had the property surveyed, which survey revealed that the true boundary line ran west of the line marked by the rock piles and trail. In October 1981, the Boharas erected a fence approximately one foot east of the survey line.

Larry Bushey testified that he was contacted by the Manzes in July 1981, to survey the quarter section line between the northeast quarter and the northwest quarter of Section 4. He estimated that the diameter of the middle rock pile was fifty feet, and also testified that he could see no evidence of an old buggy trail or subsequent trail on the 1960 photograph. Bushey observed a road or trail on both 1968 and 1976 aerial photographs, which were located east of, and did not extend the length of, the 1960 land use line.

The Boharas point to the following language in *Trautman*, 147 N.W.2d at 413, which they argue applies to this case:

"We are unable to find from the record how long the defendant has possessed and occupied any particular amount of plaintiff's land."

In *Trautman* the above quoted language was utilized by this Court in holding that the doctrine of acquiescence did not apply to a road or trail which ran near the defendant's north boundary, as there was no evidence that the parties had acquiesced in the road or trail as being the boundary line between their adjoining properties. We noted that the record did not establish that the road or trail had continued to be in one place, rather the path of travel had moved from time to time, depending on weather conditions and encroachment by the defendant plowing so close to the road as to move the road further on to the plaintiff's land. *Id.*

■ We are likewise troubled by the evidence presented in this case. In *Terra Vallee* we noted that the doctrine of acquiescence evolved from the harsher rule of adverse possession, which requires that the property of another be held by open and hostile possession. The burden of proving adverse possession rests with the person alleging it and must be established by clear and convincing evidence. *Torgerson v. Rose*, 339 N.W.2d 79, 84 (N.D.1983). This burden equally applies to one claiming property to the exclusion of the true owner through the doctrine of acquiescence. *Trautman*, 147 N.W.2d at 413. To con-

clude otherwise would only serve to encourage aggressive, assertive action across boundary lines, and not good neighborliness. Further, if we did not require this quantum of proof we might flood our courts with boundary disputes to the detriment of other cases needing our attention.

■ The actual land use line, apparently the trail or road referred to by Bennie and Terry Manz, and Violet Schott, was no longer in existence at the time of trial. But assuming it did exist as testified to by a number of persons, there is nothing in the record from which a surveyor could say with certainty that it extended as the trial court has concluded in this case. In our previous decisions where we have upheld claims of title based upon the doctrine of acquiescence, there has existed a boundary line comprised of something more substantial, such as a fence line or a rock line. *Terra Vallee*, 303 N.W.2d 79; *Trautman*, 147 N.W.2d 407; *Bernier*, 60 N.D. 549, 236 N.W. 243. Since the doctrine of acquiescence can deprive a record owner of his or her property, a court should be reluctant to conclude that a trail between three rock piles, one of which rock piles has been removed years ago and which rock piles vary in width with the passage of time and continue to accumulate rocks in the normal course of farming, and which trail could move from one location to another within those widths with field usage on either side, has that visibility, certainty, and persistency of placement necessary to constitute a boundary by acquiescence, which we have observed must be definite, certain, and not speculative, and open to observation. We hold that the evidence presented in this case does not constitute an adequate basis for determining title to land on the basis of the doctrine of acquiescence.

We cannot agree with the trial court's determination that the 1960 land use line was established as the boundary between the parties' property by the doctrine of acquiescence. Therefore, for the reasons stated, the judgment of the district court is reversed and the case is remanded for modification of the judgment to conform the

boundary of the parties' property as it is described by government survey.

VANDE WALLE and GIERKE, JJ., and PEDERSON, Surrogate Justice, concur.

Surrogate Justice PEDERSON participated in this case by assignment pursuant to § 27–17–03, N.D.C.C.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.